# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS | : | |
| ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | |
| | : | |
| PRODUCT(S): | : | |
| | : | |
| INSTRUMENT PANEL CLUSTERS | : | 2:12-cv-00202 |
| HEATER CONTROL PANELS | : | 2:12-cv-00402 |
| BEARINGS | : | 2:12-cv-00502 |
| OCCUPANT SAFETY RESTRAINT SYSTEMS | : | 2:12-cv-00602 |
| RADIATORS | : | 2:13-cv-01002 |
| AUTOMOTIVE LAMPS | : | 2:13-cv-01202 |
| SWITCHES | : | 2:13-cv-01302 |
| IGNITION COILS | : | 2:13-cv-01402 |
| STEERING ANGLE SENSORS | : | 2:13-cv-01602 |
| HID BALLASTS | : | 2:13-cv-01702 |
| ELECTRIC POWERED STEERING ASSEMBLIES | : | 2:13-cv-01902 |
| FUEL INJECTION SYSTEMS | : | 2:13-cv-02202 |
| AUTOMATIC TRANSMISSION FLUID WARMERS | : | 2:13-cv-02402 |
| VALVE TIMING CONTROL DEVICES | : | 2:13-cv-02502 |
| AIR CONDITIONING SYSTEMS | : | 2:13-cv-02702 |
| CONSTANT VELOCITY JOINT BOOT PRODUCTS | : | 2:14-cv-02902 |
| SPARK PLUGS | : | 2:15-cv-03002 |
| AUTOMOTIVE HOSES | : | 2:15-cv-03202 |
| SHOCK ABSORBERS | : | 2:16-cv-03302 |
| BODY SEALING PRODUCTS | : | 2:16-cv-03402 |
| INTERIOR TRIM PRODUCTS | : | 2:16-cv-03502 |
| BRAKE HOSES | : | 2:16-cv-03602 |
| EXHAUST SYSTEMS | : | 2:16-cv-03702 |
| CERAMIC SUBSTRATES | : | 2:16-cv-03802 |
| POWER WINDOW SWITCHES | : | 2:16-cv-03902 |
| AUTOMOTIVE STEEL TUBES | : | 2:16-cv-04002 |
| ACCESS MECHANISMS | : | 2:16-cv-04102 |
| SIDE DOOR LATCHES | : | 2:17-cv-04302 |
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

**Dealership Plaintiffs' Motion to Authorize Dissemination of Class Notice and to Conduct Hearing for Final Approval of Settlements and Application for Interim Expenses, Attorneys' Fees, and Service Awards**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Automobile Dealership Plaintiffs move the Court for approval to disseminate class notice for a series of preliminarily approved settlements (the "Settlements") in the above matters and to conduct a hearing for final approval of the Settlements and an application for an interim award of expenses, attorneys' fees, and class representative service awards.

In support of this Motion, Automobile Dealership Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law and the Declaration of Alan Vasquez.

The Automobile Dealership Plaintiffs and settling Defendants do **not** request a hearing for this motion. The settling Defendants do not oppose this motion.

Dated: September 24, 2019          Respectfully submitted,

                                   */s Gerard Mantese*
                                   Gerard V. Mantese
                                   (Michigan Bar No. P34424)
                                   **MANTESE HONIGMAN, P.C.**
                                   1361 E. Big Beaver Road
                                   Troy, Michigan 48083
                                   Telephone: (248) 457-9200
                                   gmantese@manteselaw.com

                                   *Interim Liaison Counsel for Dealership Plaintiffs*

                                   Shawn M. Raiter
                                   **LARSON KING, LLP**
                                   2800 Wells Fargo Place
                                   30 East Seventh Street
                                   St. Paul, MN 55101
                                   Telephone:  (651) 312-6500
                                   Facsimile:   (651) 312-6618
                                   sraiter@larsonking.com

Jonathan W. Cuneo
**CUNEO, GILBERT & LADUCA, LLP**
4725 Wisconsin Ave. NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone:  (662) 834-2488
Facsimile:  (662) 834-2628
dbarrett@barrettlawgroup.com

***Interim Co-Lead Class Counsel for Dealership
Plaintiffs***

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS | : | |
| ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | |
| | : | |
| PRODUCT(S): | : | |
| | : | |
| INSTRUMENT PANEL CLUSTERS | : | 2:12-cv-00202 |
| HEATER CONTROL PANELS | : | 2:12-cv-00402 |
| BEARINGS | : | 2:12-cv-00502 |
| OCCUPANT SAFETY RESTRAINT SYSTEMS | : | 2:12-cv-00602 |
| RADIATORS | : | 2:13-cv-01002 |
| AUTOMOTIVE LAMPS | : | 2:13-cv-01202 |
| SWITCHES | : | 2:13-cv-01302 |
| IGNITION COILS | : | 2:13-cv-01402 |
| STEERING ANGLE SENSORS | : | 2:13-cv-01602 |
| HID BALLASTS | : | 2:13-cv-01702 |
| ELECTRIC POWERED STEERING ASSEMBLIES | : | 2:13-cv-01902 |
| FUEL INJECTION SYSTEMS | : | 2:13-cv-02202 |
| AUTOMATIC TRANSMISSION FLUID WARMERS | : | 2:13-cv-02402 |
| VALVE TIMING CONTROL DEVICES | : | 2:13-cv-02502 |
| AIR CONDITIONING SYSTEMS | : | 2:13-cv-02702 |
| CONSTANT VELOCITY JOINT BOOT PRODUCTS | : | 2:14-cv-02902 |
| SPARK PLUGS | : | 2:15-cv-03002 |
| AUTOMOTIVE HOSES | : | 2:15-cv-03202 |
| SHOCK ABSORBERS | : | 2:16-cv-03302 |
| BODY SEALING PRODUCTS | : | 2:16-cv-03402 |
| INTERIOR TRIM PRODUCTS | : | 2:16-cv-03502 |
| BRAKE HOSES | : | 2:16-cv-03602 |
| EXHAUST SYSTEMS | : | 2:16-cv-03702 |
| CERAMIC SUBSTRATES | : | 2:16-cv-03802 |
| POWER WINDOW SWITCHES | : | 2:16-cv-03902 |
| AUTOMOTIVE STEEL TUBES | : | 2:16-cv-04002 |
| ACCESS MECHANISMS | : | 2:16-cv-04102 |
| SIDE DOOR LATCHES | : | 2:17-cv-04302 |
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

**Memorandum in Support of Dealership Plaintiffs' Motion to Authorize Dissemination of Class Notice and to Conduct Hearing for Final Approval of Settlements and Application for <u>Interim Expenses, Attorneys' Fees, and Service Awards</u>**

**Statement of the Issues Presented**

1. Whether the Court should approve the notice plan proposed by the Automobile Dealer Plaintiffs for the fourth round of dealership settlements;

2. Whether the Court should authorize Settlement Class Counsel to provide notice of the Settlement Agreements to Members of the Settlement Classes (as defined in the Settlement Agreements);[1] and

3. Whether the Court should approve the proposed schedule for the notice plan and consideration of final approval of the fourth round of dealership settlements.

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreements.

i

**Controlling or Most Appropriate Authorities**

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Prandin Direct Purchaser Antitrust Litig.*, C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015)

**Table of Contents**

Introduction ................................................................................................................... 1

Pertinent Procedural History .......................................................................................... 1

    A.    Automobile Dealership Settlements with Certain Defendants ......................... 1

    B.    Plan for Dissemination of Notice to Potential Members of the Settlement Classes .... 3

Argument ........................................................................................................................ 5

    I.    The Court Should Approve the Form and Manner of Notice to the Automobile Dealer Settlement Class Members ...................................................... 5

        A.    Notice Standards and Requirements ...................................................... 5

        B.    The Proposed Manner of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1) ................................................................. 6

        C.    The Proposed Form of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1) ................................................................. 8

    II.    The Proposed Notices Provide Class Members With Sufficient Information About the Details of the Settlements .......................................................... 9

        A.    Plans of Allocation ............................................................................... 9

        B.    Costs, Attorneys' Fees, and Incentive Awards ................................... 10

    III.    The Court Should Enter the Proposed Order, Which Schedules the Final Approval Hearing and Establishes Other Deadlines ........................................ 12

**Table of Authorities**

## Cases

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...........................11

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969) ..................................................................6

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ..................................................12

*Carlough v. Amchem Prods.*, 158 F.R.D. 314 (E.D. Pa. 1993).........................................................6

*Connectivity Systems Inc. v. National City Bank*, No. 2:08-cv-1119, 2011 WL 292008
     (S.D. Ohio Jan. 26, 2011) ...........................................................................................11

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 2008) .....................................................................11

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 2005 WL 388562 (S.D.N.Y. Feb. 18, 2005) .................11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ..............................5, 6

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991).....................12

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) .........................................................................5

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ....................................................5

*Hainey v. Parrott*, No. 1:02-cv-733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) ...............................11

*In re Air Cargo Shipping Serv. Litig.*, No. 06-MD-1775 (JG)(VVP), 2011 WL 2909162
     (E.D.N.Y., Jul. 15, 2011) ...........................................................................................12

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ...........................................10

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ...........................................12

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) .......................10

*In re Diet Drugs Prod. Liab. Litig.*, Civil Action No. 99-20593, 2002 WL 32154197
     (E.D. Pa., Oct. 3, 2002) .............................................................................................12

*In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534 (N.D. Ga. 1992)..................................5, 6

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519
     (E.D. Mich. Feb. 22, 2011) ..........................................................................................9

*In re Prandin Direct Purchaser Antitrust Litig.*, C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473
     (E.D. Mich. Jan. 20, 2015) ..........................................................................................11

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 2d 450 (D.N.J. 1997) ............................8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996) ................................................6

*In re Revco Sec. Litig.*, Nos. 851, 89CV593, 1992 WL 118800 (N.D. Ohio May 6, 1992) ......................12

*In re Skelaxin Antitrust Litig.*, No. 2:12-cv-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ............11

*In re Southeastern Milk Antitrust Litig.*, Master File No. 2:08-MD-1000, 2013 WL 2155379
    (E.D. Tenn. May 17, 2013) .......................................................................................................................9

*In re Sterling Foster & Company, Inc. Sec. Litig.*, 238 F. Supp. 2d 480 (E.D.N.Y. 2002) ............................12

*In re Washington Public Power Supply System Sec. Litig.*, MDL No. 551, 1988 WL 158947 (W.D. Wash.
    July 28, 1988) ..........................................................................................................................................10

*Larson v. Spring Nextel Corp.*, No. 07-5325 (JLL), 2009 WL 1228443 (D.N.J. April 30, 2009) ...............7

*Liberte Capital Group v. Capwill*, No. 5:99 CV 818, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007) .....11

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ................6

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992) .........................................................5

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).............................5

*Weigner v. The City of New York*, 852 F.2d 646 (2d Cir. 1988) .....................................................................6

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................................6, 8

Fed. R. Civ. P. 23(b)(3)..................................................................................................................................5

Fed. R. Civ. P. 23(c)(2)(B)................................................................................................................3, 5, 6, 8

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii)..................................................................................................................8

Fed. R. Civ. P. 23(c)(3)...................................................................................................................................8

Fed. R. Civ. P. 23(e)(1) ..................................................................................................................................5

Fed. R. Civ. P. 23(h) ....................................................................................................................................10

**Other**

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311 (2004).............................................5, 6

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.312 (2004)...............................................9

MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.633 (2004)...............................................8

**Introduction**

The Automobile Dealership Plaintiffs ("Dealership Plaintiffs") respectfully submit this Memorandum in support of their motion seeking Court approval to disseminate class notice for a series of preliminarily approved settlements (the "Settlements") in the cases noted above and to conduct a hearing for final approval of the Settlements and an application for an award of expenses, attorneys' fees, and class representative service awards. The settlements here constitute the fourth round ("Round Four") of Dealership Plaintiffs settlements in this MDL.

With the Court's consent, the Dealership Plaintiffs deferred providing notice of the Settlements to class members. The interests of economy were better served by deferring notice and final approval until more settlements were reached. The aggregate Round Four Settlements now warrant the dissemination of notice and consideration of final approval. Dealership Plaintiffs believe that notice should be issued and the final approval process should be started. Dealership Plaintiffs believe that this is their last group of settlements in this MDL litigation.

Dealership Plaintiffs move the Court to approve the form and plan for dissemination of notice to the Dealership Plaintiff settlement classes. At a final approval hearing, the Dealership Plaintiffs will ask the Court to consider: (1) the fairness, reasonableness, and adequacy of the Settlements; (2) a request for a reimbursement of incurred litigation expenses; (3) a request for an award of attorneys' fees; and (4) a request for service awards for the named Dealership Plaintiffs.

**Pertinent Procedural History**

**A.      Automobile Dealership Settlements with Certain Defendants.**

The Round Four Settlements at issue in this motion total approximately $88 million. The Court has granted preliminary approval to the Dealership Plaintiffs' settlements with the following Defendants:

1

| Defendant | Case Number | Case Name / Parts |
|---|---|---|
| Alpha | 2:16-cv-04102 | Access Mechanisms |
| | 2:16-cv-14163 | |
| Bosal | 2:16-cv-03702 | Exhaust Systems |
| Brose | 2:17-cv-04302 | Door Latches |
| Calsonic | 2:13-cv-01002 | Radiators |
| | 2:13-cv-02402 | ATF Warmers |
| | 2:13-cv-02702 | Air Conditioning |
| Continental | 2:12-cv-00202 | Instrument Panel Clusters |
| Corning | 2:16-cv-03802 | Ceramic Substrates |
| Delphi | 2:13-cv-01402 | Ignition Coils |
| Faurecia | 2:16-cv-03702 | Exhaust Systems |
| Green Tokai | 2:16-cv-03402 | Body Sealings |
| Keihin | 2:13-cv-02202 | Fuel Injection Systems |
| KYB | 2:15-cv-03302 | Shock Absorbers |
| Mahle Behr | 2:13-cv-02702 | Air Conditioning Systems |
| Maruyasu | 2:13-cv-02202 | Fuel Injection Systems |
| | 2:16-cv-04002 | Automotive Steel Tubes |
| Meritor | 2:16-cv-03702 | Exhaust Systems |
| Mikuni | 2:13-cv-02202 | Fuel Injection Systems |
| | 2:13-cv-02502 | Valve Timing Control Devices |
| Mitsubishi Heavy | 2:13-cv-02702 | Air Conditioning Systems |
| Nachi Fujikoshi | 2:12-cv-00502 | Bearings |
| NGK Spark Plugs | 2:15-cv-03002 | Spark Plugs |
| | 2:15-cv-13465 | |
| | 2:16-cv-13310 | |
| Panasonic | 2:13-cv-02702 | Air Conditioning Systems |
| Sanden | 2:13-cv-02702 | Air Conditioning Systems |
| Sanoh | 2:16-cv-04002 | Automotive Steel Tubes |
| Showa | 2:13-cv-01902 | Electric Powered Steering Assemblies |
| | 2:16-cv-03302 | Shock Absorbers |
| SKF | 2:12-cv-00502 | Bearings |
| Stanley | 2:13-cv-01202 | Automotive Lamps |
| | 2:13-cv-01702 | HID Ballasts |
| TKH | 2:12-cv-00602 | Occupant Safety Restraint Systems |
| Tenneco | 2:16-cv-03702 | Exhaust Systems |
| Tokai Rika | 2:12-cv-00402 | Heater Control Panels |
| | 2:12-cv-00602 | Occupant Safety Restraint Systems |
| | 2:13-cv-01302 | Switches |
| | 2:13-cv-01602 | Steering Angle Sensors |
| Toyo Denso | 2:13-cv-01402 | Ignition Coils |
| | 2:16-cv-03902 | Power Window Switches |

2

| Defendant | Case Number | Case Name / Parts |
|---|---|---|
| Toyoda Gosei | 2:12-cv-00602 | Occupant Safety Restraint Systems |
| | 2:14-cv-02902 | CVJ Boots |
| | 2:15-cv-03202 | Automotive Hoses |
| | 2:16-cv-03402 | Body Sealing Products |
| | 2:16-cv-03502 | Interior Trim Products |
| | 2:16-cv-03602 | Brake Hoses |
| Usui | 2:16-cv-13424 | Automotive Steel Tubes |
| | 2:16-cv-04002 | |
| Valeo | 2:16-cv-04102 | Access Mechanisms |

For each of the foregoing Settlements, the Court approved the Dealership Plaintiffs' proposal to defer providing notice until a later time.  It is appropriate to commence the notice process under Rule 23(c)(2)(B) and to conduct a final approval hearing for these Round Four Settlements.

**B.**      **Plan for Dissemination of Notice to Potential Members of the Settlement Classes.**

The Settlements provide cash benefits to automobile dealerships that purchased certain parts and/or purchased new vehicles containing those parts in jurisdictions that the Dealership Plaintiffs contend allow antitrust indirect purchasers to seek money damages: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Included States").

Dealership Plaintiffs retained KCC Class Action Services ("KCC"),[2] an experienced class-notice consultant, to design and implement the notice plan.  KCC has obtained mailing addresses for approximately 11,000 potential dealer class members in the Included States.  (*See* Declaration of Alan Vasquez.)  Similarly, the notice consultant obtained a list of approximately 68,000 email addresses associated with dealerships in the Included States.  (*Id.*)  To provide notice of these

Settlements to potential class members, Dealership Plaintiffs propose a multi-faceted notice program intended to provide the best notice practicable under the circumstances.   KCC has proposed a notice plan that includes:

- Direct mail notice to more than 11,000 postal addresses of dealerships potentially eligible for money benefits under the Settlements;

- Email notice to more than 68,000 email addresses associated with dealerships potentially eligible for money benefits under the Settlements;

- Published notice in magazines like *Ward's AutoWorld*, *Automotive News*, and *Auto Dealer Monthly* and digital media designed to target new car automobile dealerships nationwide;

- Online media efforts through outlets like Facebook and Twitter; and

- Earned media efforts through a national press release and the settlement web site, www.AutoDealerSettlement.com

(*See* Vasquez Decl.)  This notice plan benefits from and builds upon the notice plans approved by the Court for the first three rounds of Dealership Plaintiffs settlements.[3]  This comprehensive notice plan will reach more than 95 percent of the potential class members in the Included States.   (*Id.*)

---

[2] Gilardi & Co. was acquired by KCC Class Action Services and the same people who previously assisted the Dealership Plaintiffs continue to do so at KCC.

[3] For the previous phases of Dealership Plaintiffs notice, Gilardi worked with specialty vendors to compile both an email address list and U.S.P.S. postal address list of every current consumer new vehicle automotive dealership in the indirect purchaser states, and numerous addresses for dealerships that went out of business during the class period, but who may nevertheless have made a qualifying purchase and thus be eligible for participation in the claims process.  For this fourth phase of notice, KCC has purchased an updated nationwide dealer list including 11,000 postal addresses and 68,000 email addresses for every dealer located in the indirect purchaser states.  Prior to the postal and email distribution of notice,  will cross-reference the new dealer lists against the old dealer lists and create a new list with all unique postal addresses and email addresses found in the data.  (*See* Vasquez Decl.)

**Argument**

I.    **The Court Should Approve the Form and Manner of Notice to the Automobile Dealer Settlement Class Members.**

Fed. R. Civ. P. 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

A.    **Notice Standards and Requirements.**

The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74, 94 S.Ct. 2140, 40 L.Ed.2d 732, (1974)). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311, at 288 (2004) ("MANUAL"). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). Each class member need not receive actual notice for the due-process standard to be met, "so long as class

5

counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D. N.Y. 1996).

Where names and addresses of known or potential class members are reasonably available, direct-mail notice should be provided. *See, e.g.*, *Eisen*, 417 U.S. at 175-76; MANUAL, § 21.311, at 292. If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due-process clause and Rule 23. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Carlough v. Amchem Prods.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993).

Due process is satisfied even if all class members do not receive actual notice, as long as the plan was reasonably likely to inform the persons affected. *See, e.g., Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). Whether a notice dissemination plan is reasonable is a function of the plan's anticipated results. *In re Domestic Air Transp.*, 141 F.R.D. at 539; *see also Berland v. Mack*, 48 F.R.D. 121, 129-30 (S.D.N.Y. 1969).

**B.    The Proposed Manner of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1).**

Dealership Plaintiffs propose providing notice through several different channels. Individual notice (the "Postal Notice" Exhibit 1 to the Proposed Order) will be mailed to the more than 11,000 known postal addresses associated with current and former new vehicle automotive dealerships in the Included States. The Postal Notice will direct recipients to a settlement website ("Settlement Website") for additional information.  (*See* Ex. 1.)

A summary form of notice (the "Email Notice," Exhibit 2 to the Proposed Order) will be sent by email to addresses associated with dealers in the Included States.  (*See* Ex. 2.) The Email Notice will direct recipients to the Settlement Website for additional information. A summary notice (the "Publication Notice") will be published in: (1) two insertions in *Ward's AutoWorld*, (2) a single insertion in *Automotive News*, and (3) a single insertion in *Auto Dealer Monthly*. (Vasquez Decl.)

The content of the Publication Notice will be the same as the Email Notice and will direct readers to the Settlement Website for further information.  (*Id.*)  A press release on a national newswire will be issued, directing readers to the Settlement Website for additional information.  (*Id.*)

The Settlement Website provides the definitions of the Settlement Classes, a detailed description of the Settlements, the settlement agreements, and the long-form Postal Notice. (Ex. 1.) The Settlement Website describes the options for participating in, seeking exclusion from, or objecting to the Settlements.  The Settlement Website will also display, as the relevant information becomes available: (1) information about the proposed methods for allocating the settlement funds (the "Plans of Allocation"); (2) deadlines and Proof of Claim forms; (3) relevant court documents and filings; and (4) updates on the status of Court approval.  The notices and the Settlement Website also provide a toll-free telephone number that can be called for assistance or more information. (See Ex. 1 & 2.)

To further supplement the Postal, Email, and Publication notices, online notice efforts will also be used.  For example, banner ads prominently displaying the address of the Settlement Website will run in *Ward's* e-newsletter, which is distributed to approximately 33,000 automobile dealer professionals throughout the United States. (*See* Vasquez Decl.)  KCC will also maintain Facebook and Twitter accounts to further publicize the Settlements and the Settlement Website.  (*Id.*)

The methods of notice proposed here are the best available under the circumstances.  The proposed methods are well-designed to reach potential Settlement Class members and to comply with due process.  Nearly all potential Settlement Class members in the Included States will receive direct, mailed notice.  The more than 95 percent "reach" for these potential class members far exceeds due process requirements. *See, e.g.*, *Larson v. Sprint Nextel Corp.*, No. 07-5325 (JLL), 2009 WL 1228443, at *11 (D. N.J. April 30, 2009).  The "reach" of the notice proposed here far exceeds notice reach approved in other cases.  *Id.* at *12.  ("No case stands for the proposition that a

publication notice reach of 49-53 percent is disallowed.")  The Court should preliminarily approve

the Dealership Plaintiffs' proposed notice plan and should allow the notice process to begin.

>   **C.**   **The Proposed Form of Notice Satisfies the Requirements of Fed. R. Civ. P.**
>   **23(c)(2)(B) and (e)(1).**

The content of a class action settlement notice "must clearly and concisely state in plain,

easily understood language" seven types of information: "(i) the nature of the action; (ii) the

definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may

enter an appearance through an attorney if the member so desires; (v) that the court will exclude

from the class any member who requests exclusion; (vi) the time and manner for requesting

exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R.

Civ. P. 23(c)(2)(B)(i)-(vii).

The long form Postal Notice and short-form Email and Publication Notices are drafted in

the "plain language" format preferred by federal courts and provide the information required by

Rule 23.  (*See* Vasquez Decl.)  The notices were drafted with assistance from KCC, a well-regarded

class action notice expert.  KCC believes that these notices are understandable and compliant with

due process.  (*Id.*)  These notices are similar to those approved by the Court in the first three rounds

of Dealership Plaintiffs settlements (about which no objections were made).  The notices satisfy the

content requirements of Federal Rule of Civil Procedure 23.  *In re Prudential Ins. Co. of Am. Sales*

*Practices Litig.*, 962 F.Supp. 450, 496 (D.N.J. 1997); MANUAL at § 21.633.  At final approval, the

Dealership Plaintiffs will show that the form and content of the notices, together with the manners

of dissemination, were reasonably calculated to reach the members of the Settlement Classes and

were the best form of notice available under the circumstances, in satisfaction of federal law and due

process.

II.     **The Proposed Notices Provide Class Members With Sufficient Information About the Details of the Settlements.**

The notice plan also provides potential members of the Settlement Classes with information about the benefits available under the Settlements, their options, and the attorneys' fees, costs, and service awards that may be requested at final approval.  The notices also direct dealerships to the plans of allocation that have been approved by the Court or which will be submitted for consideration.

A.     **Plans of Allocation**

Dealership Plaintiffs propose to continue using the Plans of Allocation already approved by the Court for the parts in which prior settlements were approved.  For new parts at issue in Round Four Settlements, the notice plan will advise Settlement Class members that information about the new Plans of Allocation will be published on the Settlement Website when sufficient information is available to issue those Plans.  Dealership Plaintiffs do not, in this motion, ask the Court to approve the new Plans of Allocation and the Court may grant final approval before approving a plan of allocation.  *See, e.g.,* MANUAL § 21.312 ("Often . . . the . . . details of allocation and distribution are not established until after the settlement is approved"); *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:08-MD-1000, 2013 WL 2155379, at *3 (E.D. Tenn. May 17, 2013) (district court gave final approval to a settlement without a plan of allocation, noting that "[o]nce the claim processing procedure is completed, plaintiffs will submit a proposed plan of allocation of the settlement proceeds for the Court's approval"); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *2, *17 (E.D. Mich. Feb. 22, 2011) ("Class Counsel explained at the Fairness Hearing that the final plan of allocation was not included in the original Notice in part because of the potential for additional settlements with other Defendants which may affect the final plan of allocation," and finally approving the settlements that were presented, retaining jurisdiction to, among other things, "enter[] any Orders or conducting any hearings in connection with any final plan of distribution or

claims submission process . . . "); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) ("To impose an absolute requirement that a hearing on the fairness of a settlement follow adoption of a distribution plan would immensely complicate settlement negotiations and might so overburden the parties and the district court as to prevent either task from being accomplished"); *In re Washington Public Power Supply System Sec. Litig.*, MDL No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) ("Such deferral of allocation decisions is routinely followed in partial settlements where the appropriate allocation among class members can best be determined when further settlements have been achieved or the litigation is completely resolved.")

Information about how the settlement money will be allocated through new Plans of Allocation will be published after Dealership Plaintiffs and their Court-approved allocation consultant, Stuart A. Rosenthal, have determined how the proceeds of those Settlements will be allocated to (1) dealers who purchased vehicle models that were subject to alleged collusion on bids for component parts, (2) dealers who purchased vehicles from manufacturers of vehicles allegedly affected by collusion on bids for component parts, (3) dealers who purchased allegedly affected component parts manufactured by the Settling Defendants or their alleged co-conspirators, and (4) a reserve fund for future allocation and distribution to eligible Settlement Class members.[4]

## B.     Costs, Attorneys' Fees, and Incentive Awards

Counsel for the Dealership Plaintiffs will seek reimbursement of certain litigation expenses already incurred during the course of the litigation of the cases involved in the Settlements. *See, e.g.*, Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorneys' fees and untaxable costs that are authorized by law or by the parties' agreement"); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("Under the common fund

---

[4] Plans of Allocation for many of the parts at issue in Round Four have already been approved by the Court and Dealership Plaintiffs anticipate that Plans of Allocation for most of the remaining parts will be submitted for the Court's approval in advance of the final fairness hearing.

doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." (Citation and internal quotation marks omitted)).

Class representatives are "an essential ingredient of any class action" and incentive awards are appropriate to induce a business or consumer to participate in worthy class action lawsuits. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 2008). "Such "[i]ncentive awards serve an important function, particularly where the named plaintiffs participated actively in the litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (*citing Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005)).

The notice plan advises Settlement Class members that Settlement Class Counsel may request that a portion of these Settlements be put aside for potential service awards for the automobile dealerships that have served as class representatives in these cases. These dealerships shouldered a significant discovery burden and still face discovery or trial burdens. In light of the substantial benefits provided to the Settlement Classes, an award from the Court recognizing the class representatives' efforts will be appropriate. *See In re Prandin Direct Purchaser Antitrust Litig.*, C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *5 (E.D. Mich. Jan. 20, 2015) (in a $19 million settlement, award of $50,000 to each class representative); *In re Skelaxin Antitrust Litig.*, No. 2:12–cv–83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) (settlement of direct purchaser pharmaceutical antitrust action, awarding $50,000 to each class representative); *Connectivity Systems Inc. v. National City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *20 (S.D. Ohio Jan. 26, 2011) (in $10 million settlement, awarding $50,000 each to three named plaintiffs); *Liberte Capital Group v. Capwill*, No. 5:99 CV 818, 2007 WL 2492461, at *3 (N.D. Ohio Aug. 29, 2007) (awarding $97,133.83 and $95,172.47 to two named plaintiffs representing subclasses that received $11 million and $7 million); *Hainey v.*

*Parrott*, No. 1:02–cv–733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) (approving service award of $50,000 for each class representative); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535-36 (E.D. Mich.2003) (awarding $75,000 to each class representative); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D. Ohio 2001) (granting a $50,000 service award out of a $5.25 million fund); *In re Revco Sec. Litig.*, Nos. 851, 89CV593, 1992 WL 118800, *7 (N.D. Ohio May 6, 1992) ($200,000 incentive award to named plaintiff); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards of $50,000 to six class representatives out of a settlement fund of $56.6 million).

The notice plan also provides notice of counsel for the Dealership Plaintiffs' intent to request an award of attorneys' fees and expenses as part of the final approval process. The Court may award attorneys' fees and expenses before the litigation is concluded. *See In re Air Cargo Shipping Serv. Litig.*, No. 06-md-1775 (JG) (VVP), 2011 WL 2909162, at *5-7 (E.D.N.Y., Jul. 15, 2011) (interim award granted); *In re Sterling Foster & Company, Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 484-85, 489-90 (E.D.N.Y. 2002) (interim attorneys' fees awarded). Counsel for the Dealership Plaintiffs have litigated these cases for seven years and will continue to vigorously represent the interests of dealerships. *See In re Diet Drugs Prod. Liab. Litig.*, Civil Action No. 99-20593, 2002 WL 32154197, at *12 (E.D. Pa., Oct. 3, 2002) (awarding an interim fee after four years of litigation and noting "to make them wait any longer for at least some award would be grossly unfair").

## III.   The Court Should Enter the Proposed Order, Which Schedules the Final Approval Hearing and Establishes Other Deadlines.

Dealership Plaintiffs respectfully request that the Court hold a single final approval hearing in connection with the Settlements. At the hearing, the Court should consider: whether the Settlements are fair, reasonable, and adequate; whether to approve a request for attorneys' fees and reimbursement of litigation expenses; and whether to approve a request for service awards for the named Dealership Plaintiffs.

12

The proposed order sets out the method and timing of requests for exclusion and for submitting any objections to the Settlements.  Other dates are also set out in the proposed order. The Dealership Plaintiffs propose the following schedule:

| Event |
| --- |
| Mailing of Postal Notice and Email Notice, Establishment of Settlement Website |
| Commence Placement of Publication Notice |
| Deadline for filing Opt-Outs or objections to Settlements |
| Deadline for appearance of Counsel regarding objections |
| Deadline for Counsel to file notice of intent to appear at Final Approval Hearing |
| Final Approval Hearing |
| Proof of Claim deadline |

Dated: September 24, 2019              Respectfully submitted,

*/s Gerard Mantese*
Gerard V. Mantese
(Michigan Bar No. P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com

*Interim Liaison Counsel for*
*Dealership Plaintiffs*

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone:  (651) 312-6500

13

Facsimile:   (651) 312-6618
sraiter@larsonking.com

Jonathan W. Cuneo
**CUNEO, GILBERT & LADUCA,
LLP**
4725Wisconsin Ave. NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone:   (662) 834-2488
Facsimile:   (662)834-2628
dbarrett@barrettlawgroup.com

*Interim Co-Lead Class Counsel for
Dealership Plaintiffs*

## CERTIFICATE OF SERVICE

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **Memorandum in Support of Dealership Plaintiffs' Motion to Authorize Dissemination of Class Notice and to Conduct Hearing for Final Approval of Settlements and Application for Interim Expenses, Attorneys' Fees, and Service Awards** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on September 24, 2019

/s/Gerard V. Mantese

Gerard V. Mantese

Lk1873729

1

2

3   **IN THE UNITED STATES DISTRICT COURT**
    **FOR THE EASTERN DISTRICT OF MICHIGAN**
4   **SOUTHERN DIVISION**

5   | IN RE: AUTOMOTIVE PARTS | : | |
6   | ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
    | | : | |

7   | | : | |
    | PRODUCT(S): | : | |
8   | | : | |

9   | INSTRUMENT PANEL CLUSTERS | : | 2:12-cv-00202 |
    | HEATER CONTROL PANELS | : | 2:12-cv-00402 |
    | BEARINGS | : | 2:12-cv-00502 |
10  | OCCUPANT SAFETY RESTRAINT SYSTEMS | : | 2:12-cv-00602 |
    | RADIATORS | : | 2:13-cv-01002 |
11  | AUTOMOTIVE LAMPS | : | 2:13-cv-01202 |
    | SWITCHES | : | 2:13-cv-01302 |
12  | IGNITION COILS | : | 2:13-cv-01402 |
13  | STEERING ANGLE SENSORS | : | 2:13-cv-01602 |
    | HID BALLASTS | : | 2:13-cv-01702 |
14  | ELECTRIC POWERED STEERING ASSEMBLIES | : | 2:13-cv-01902 |
    | FUEL INJECTION SYSTEMS | : | 2:13-cv-02202 |
15  | AUTOMATIC TRANSMISSION FLUID WARMERS | : | 2:13-cv-02402 |
    | VALVE TIMING CONTROL DEVICES | : | 2:13-cv-02502 |
16  | AIR CONDITIONING SYSTEMS | : | 2:13-cv-02702 |
17  | CONSTANT VELOCITY JOINT BOOT PRODUCTS | : | 2:14-cv-02902 |
    | SPARK PLUGS | : | 2:15-cv-03002 |
18  | AUTOMOTIVE HOSES | : | 2:15-cv-03202 |
    | SHOCK ABSORBERS | : | 2:16-cv-03302 |
19  | BODY SEALING PRODUCTS | : | 2:16-cv-03402 |
    | INTERIOR TRIM PRODUCTS | : | 2:16-cv-03502 |
20  | BRAKE HOSES | : | 2:16-cv-03602 |
21  | EXHAUST SYSTEMS | : | 2:16-cv-03702 |
    | CERAMIC SUBSTRATES | : | 2:16-cv-03802 |
22  | POWER WINDOW SWITCHES | : | 2:16-cv-03902 |
    | AUTOMOTIVE STEEL TUBES | : | 2:16-cv-04002 |
23  | ACCESS MECHANISMS | : | 2:16-cv-04102 |
    | SIDE DOOR LATCHES | : | 2:17-cv-04302 |
24  | | : | |

25  | This Document Relates to: | : | Hon. Marianne O. Battani |
    | ALL DEALERSHIP ACTIONS | : | |
26  | | : | |

27  **Declaration of Alan Vasquez Regarding Dissemination of Class Notice**

28

I, Alan Vasquez, hereby declare and state as follows:

**Introduction**

1.      I am a Vice President of Legal Notification Services at Gilardi & Co. LLC ("Gilardi"), a KCC Class Action Services ("KCC") company.  In my role, I oversee Gilardi's in-house advertising division specializing in the design and implementation of legal notice plans to reach unknown class members in class action litigation.

2.      Gilardi was established in 1984 and is one of the largest full-service class action notice and claims administrators in the United States.  The in-house advertising division has specialized in designing, developing and implementing legal notification plans for more than 25 years. As such, we are familiar with, and guided by, Constitutional due process provisions, rules of states and local jurisdictions, and the relevant case law relating to legal notification.  Media plans designed and implemented by our group have included both domestic and international newspapers and magazines, Internet-based banners, notices and websites, wire service, radio, television, point of purchase displays and direct mail. As Vice President of Legal Notification Services, I oversee the advertising group's activities as they relate to these notice services.

3.      I have been involved in the development and implementation of media plans for class action notification for more than 14 years. Prior to my engagement with Gilardi, I spent five years with another nationally recognized claims administrator serving in a similar capacity.

4.      For several years, courts have accepted my expert testimony regarding our firm's quantitative and qualitative evaluation of judicially approved notice plans. I have also testified in person and was acknowledged as an expert in <u>Larson v. Sprint Nextel Corp</u>., No. 07-cv-5325 (D. N.J.). Media campaigns for which I have been directly responsible include, but are not limited to, <u>Pappas v. Naked Juice</u>, No 11-cv-08276-JAK (C.D. Cal.), <u>Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.</u>, No. 07-ML-01897 (S.D. Cal.), <u>Pecover, et al. v. Electronic Arts Inc</u>., No. 08-cv-02820 (N.D. Cal.), <u>New Motor Vehicles Canadian Export Antitrust Litig</u>., No. MDL 03-1532 (D. Me.), <u>Keller v. Electronic Arts Inc.; National Collegiate Athletics Association; Collegiate Licensing Company</u>, No. 4:09-cv-1967 CW (N.D. Cal.), <u>Obannon v. Electronic Arts Inc.; National Collegiate Athletics Association; Collegiate Licensing Company</u>, No. 09-cv-3329 CW (N.D. Cal.) and <u>SRAM Antitrust Litig.</u>, No. 07-MD-01819 (N.D. Cal.). I have also spoken as faculty on various CLE panels related to class action notice and have been involved in the placement of

2

media in more than 400 class actions and other related matters. A more comprehensive list of notable cases for which I have been personally responsible for the notice planning and implementation services is attached as Exhibit 1.

5.      I submit this declaration at the request of Co-Lead Counsel for the automobile dealership plaintiffs in the above-referenced litigation to describe the proposed notice plan and notice services for additional settlements in the above referenced matters.  I have personal knowledge of the matters set forth in this declaration and, if called as a witness, could and would testify competently thereto.

**Case Background**

6.      The lawsuits in this multi-district litigation have been brought as proposed class actions against Defendants, the largest suppliers of certain automobile parts, globally and in the United States, for allegedly engaging in a massive, decade-long conspiracy to unlawfully fix and artificially raise the prices of certain components used in the manufacture of new automobiles, vans, SUVs, and light trucks. Defendants' alleged conspiracies targeted the United States automotive industry, potentially raising prices for car manufacturers, automobile dealerships, and consumers alike.

**Objective**

7.      The objective of the proposed Notice program is to provide the best notice practicable, consistent with the recent amendments to Rule 23 of the Federal Rules of Civil Procedure, which went into effect on December 1, 2018.  The program will target relevant class members, as defined in the Settlement Class definitions below in Paragraph 8, in the following "indirect purchaser" states and the District of Columbia ("DC"):

a.      "Arizona, Arkansas, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin."

3

**Class Definitions**

8.      Gilardi understands that Plaintiffs bring these actions on behalf of themselves and as class actions under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking relief on behalf of the following class Settlement Class definitions.

a.      The Alpha Access Mechanisms Class is defined as: All Automobile Dealerships that, from January 1, 2002 through the January 12, 2018, (a) indirectly purchased Access Mechanism(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any coconspirator of a Defendant, or (b) purchased Vehicles for resale that contained Access Mechanisms manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant.

b.      The Bosal Exhaust Systems Settlement Class is defined as: All Automobile Dealerships that, during the period from and including January 1, 2002 through August 6, 2019, (a) indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale, which included Exhaust Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

c.      The Brose Side Door Latches Settlement Class is defined as: All Automobile Dealerships that, during the period from and including January 1, 2004 through June 14, 2018, (a) indirectly purchased Side-Door Latch(es) and/or Latch Minimodul(es) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Side-Door Latch(es) and/or Latch Minimodul(es) manufactured or sold by a Defendant, any current or former subsidiary of a

4

Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

d.   The Calsonic Radiators Settlement Class is defined as: All Automobile Dealerships that, during the period from and including January 1, 2000 through March 30, 2018, (a) indirectly purchased Radiators manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Radiators manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator. Excluded from the Radiators Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

e.   The Calsonic ATF Warmers Settlement Class is defined as: All Automobile Dealerships that, during the period from and including November 1, 2002 through March 30, 2018, (a) indirectly purchased ATF Warmer(s) and Oil Cooler(s) manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained ATF Warmer(s) and Oil Cooler(s) manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator. Excluded from the ATF Warmers Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

f.   The Calsonic Air Conditioning Systems Settlement Class is defined as: All Automobile Dealerships that, during the period from and including May 1, 1999 through March 30, 2018, (a) indirectly purchased Air Conditioning Systems manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained

5

Air Conditioning Systems manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator. Excluded from the Air Conditioning Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

g.  The Continental Instrument Panel Clusters Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2001 through February 28, 2018, (a) indirectly purchased Instrument Panel clusters manufactured or sold by Defendants, or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States that contained Instrument Panel Clusters which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

h.  The Corning Ceramic Substrates Settlement Class is defined as: All Automobile Dealerships that, from January 1, 1990 through March 7, 2019, (a) indirectly purchased one or more Ceramic Substrate(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Ceramic Substrate(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries, and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

6

i. The Delphi Ignition Coils Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2000 through July 15, 2019, (a) indirectly purchased Ignition Coils manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles in the United States for resale, that contained one or more Ignition Coil(s), which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

j. The Faurecia Exhaust Systems Settlement Class is defined as: All Automobile Dealers that, from January 1, 2002 through December 8, 2017, (a) indirectly purchased one or more Exhaust System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicle(s) for resale containing one or more Exhaust System(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Exhaust Systems directly or for resale.

k. The Green Tokai Body Sealing Products Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2000, through September 18, 2018, (a) indirectly purchased Body Sealing Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Body Sealing Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or affiliate thereof, or any co-

7

conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

l.   The Keihin Fuel Injection Systems Settlement Class is defined as: All Automobile Dealerships that, from and including January 1, 2000 through May 31, 2018, (a) indirectly purchased Fuel Injection systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or {b) purchased Vehicles for resale that contained Fuel Injection Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

m.   The KYB Shock Absorbers Settlement Class is defined as: All Automobile Dealerships that, from January 1, 1995 through November 6, 2018, (a) indirectly purchased Shock Absorber(s) which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Shock Absorbers which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

n.   The MAHLE Behr Air Conditioning Systems Settlement Class is defined as: All Automobile Dealers that during the period from and including May 1, 1999 through December 20, 2017, (a) indirectly purchased one or more Air Conditioning System(s) manufactured or sold by a Defendant or any current or former subsidiary

8

or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained one or more Air Conditioning System(s), which were manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof, or co-conspirator. Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Air Conditioning Systems only directly from a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator.

o.   The Maruyasu Fuel Injection Systems Settlement Class is defined as: All Automobile Dealerships that, from and including January 1, 2000 through November 2, 2018, (a) indirectly purchased Fuel Injection systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Fuel Injection Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

p.   The Maruyasu Automotive Steel Tubes Settlement Class is defined as: All Automobile Dealerships that, from December 1, 2003 through November 2, 2018, (a) indirectly purchased Automotive Steel Tubes manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States, which included one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-

9

1   conspirators, federal governmental entities and instrumentalities of the federal
2   government, states and their subdivisions, agencies and instrumentalities.

3   q.   The Meritor Exhaust Systems Settlement Class is defined as: All Automobile
4        Dealerships that, during the period from January 1, 2002 through July 16, 2018, (a)
5        indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any
6        current or former subsidiary or affiliate thereof or any co-conspirator of a
7        Defendant, or (b) purchased Vehicles for resale, which included Exhaust Systems
8        manufactured or sold by a Defendant, any current or former subsidiary of a
9        Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement
10       Class are Defendants, their parent companies, subsidiaries and affiliates, any co-
11       conspirators, federal governmental entities and instrumentalities of the federal
12       government, states and their subdivisions, agencies and instrumentalities.

13  r.   The Mikuni Fuel Injection Systems Settlement Class is defined as: All Automobile
14       Dealerships that, during the period from and including January 1, 2000 through June
15       28, 2019, (a) indirectly purchased Fuel Injection Systems manufactured or sold by a
16       Defendant, any current or former subsidiary or affiliate thereof, or any co-
17       conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one
18       or more Fuel Injection System(s) as a component part, or indirectly purchased one
19       or more Fuel Injection System(s) as a replacement part, which were manufactured
20       or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-
21       conspirator of a Defendant. Excluded from the Settlement Class are Defendants,
22       their parent companies, subsidiaries and affiliates, any co-conspirators, federal
23       governmental entities and instrumentalities of the federal government, states and
24       their subdivisions, agencies and instrumentalities.

25  s.   The Mikuni Valve Timing Control Devices Settlement Class is defined as: All
26       Automobile Dealerships that, during the period from and including January 1, 2000
27       through June 28, 2019, (a) indirectly purchased Valve Timing Control Device(s)
28       manufactured or sold by a Defendant, any current or former subsidiary of a

10

Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one or more Valve Timing Control Device(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

t.    The Mitsubishi Air Conditioning Systems Settlement Class is defined as: All Automobile Dealerships that, during the period from and including May 1, 1999 through the June 14, 2018, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Air Conditioning Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

u.    The Nachi Bearings Settlement Class is defined as: All Automobile Dealerships that, during the period from and including January 1, 2000 through August 12, 2019, purchased a Vehicle in the United States for resale, which included, as a component part, one or more Automotive Bearings, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any alleged co-conspirator of a Defendant; or indirectly purchased, as a replacement part, one or more Automotive Bearings, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any alleged co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal

11

governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

v.   The NGK Spark Plugs Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2000 through January 24, 2018, (a) indirectly purchased Spark Plug(s), Standard Oxygen Sensor(s), or Air Fuel Ratio Sensor(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Spark Plug(s), Standard Oxygen Sensor(s), or Air Fuel Ratio Sensor(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

w.   The Panasonic Air Conditioning Systems Settlement Class is defined as: All Automobile Dealerships that, from May 1, 1999 through March 11, 2019, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale which included one or more Air Conditioning System(s) as a component part, or indirectly purchased one or more Air Conditioning System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

x.   The Sanden Air Conditioning Systems Settlement Class is defined as: All Automobile Dealerships that, from May 1, 1999 through February 8, 2018, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by

Defendants, any current or former subsidiary or affiliate of Defendants, or any co-conspirator, or (b) purchased Vehicles for resale that contained Air Conditioning System(s), which were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

y. The Sanoh Automotive Steel Tubes Settlement Class is defined as: All Automobile Dealerships that, during the period from and including December 1, 2003 through April 10, 2019, (a) indirectly purchased Automotive Steel Tube(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

z. The Showa Electronic Power Steering Assemblies Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2000 through July 19, 2019, (a) indirectly purchased one or more Electric Powered Steering Assembly(ies) which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased a Vehicle for resale that contained Electric Powered Steering Assembly(ies) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and

13

affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

aa.    The Showa Shock Absorbers Settlement Class is defined as: All Automobile Dealerships that, from January 1, 1995 through July 19, 2019, (a) indirectly purchased one or more Shock Absorber(s) which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant, or (b) purchased a Vehicle for resale that contained one or more Shock Absorber(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

bb.    The SKF Automotive Bearings Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2000 through June 28, 2019, (a) indirectly purchased Automotive Bearing(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that included one or more Automotive Bearing(s) as a component part which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

cc.    The Stanley Automotive Lamps Settlement Class is defined as: All Automobile Dealerships that, from July 1, 2002 through November 2, 2018, (a) indirectly purchased Automotive Lamp(s) as a component part, or indirectly purchased Automotive Lamp(s) as a replacement part, which were manufactured or sold by a

14

Defendant, or any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Automotive Lamp(s) manufactured or sold by a Defendant or any current or former subsidiary, affiliate thereof or co-conspirator. Excluded from the Settlement Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

dd.   The Stanley HID Ballasts Settlement Class is defined as: All Automobile Dealerships that, from July 1, 1998 through November 2, 2018, (a) indirectly purchased HID Ballast(s) as a component part, or indirectly purchased HID Ballast(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained HID Ballasts manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

ee.   The TKH Occupant Safety Restraint System Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2003 through November 27, 2018, (a) indirectly purchased Occupant Safety Restraint Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Occupant Safety Restraint Systems which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of

15

the federal government, and states and their subdivisions, agencies and instrumentalities.

ff. The Tenneco Exhaust Systems Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2002 through February 26, 2018, (a) indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Exhaust System(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or co-conspirator. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

gg. The Tokai Rika Heater Control Panels Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2000 through March 29, 2018, (i) indirectly purchased Heater Control Panel(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (ii) purchased Vehicles for resale that contained Heater Control Panel(s) as a component part, or indirectly purchased one or more Heater Control Panel(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any cocon spirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

hh. The Tokai Rika Occupant Safety Restraint Systems Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2003 through March 29, 2018, (i) indirectly purchased Occupant Safety Restraint Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof, or any

cocoonspirator of a Defendant, or (ii) purchased Vehicles for resale that contained one or more Occupant Safety Restraint System(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

ii. The Tokai Rika Switches Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2000 through March 29, 2018, (i) indirectly purchased Switches manufactured or sold by a Defendant or any co-conspirator of a Defendant, or (ii) purchased Vehicles for resale, which included one or more Switch(es) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

jj. The Tokai Rika Steering Angles Sensors Settlement Class is defined as: All Automobile Dealerships that, from September 1, 2000 through March 29, 2018, (i) indirectly purchased Steering Angle Sensor(s) manufactured or sold by a Defendant, or any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (ii) purchased Vehicles for resale, which included one or more Steering Angle Sensor(s) as a component part, or indirectly purchased one or more Steering Angle Sensor(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

kk.   The Toyo Denso Ignition Coils Settlement Class is defined as: All Automobile Dealerships that, during the period from January 1, 2000 through April 26, 2018, (a) indirectly purchased Ignition Coil(s), which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Ignition Coils which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Ignition Coils Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

ll.   The Toyo Denso Power Window Switches Settlement Class is defined as: All Automobile Dealerships that, during the period from and including January 1, 2003 through April 26, 2018, (a) indirectly purchased Power Window Switches, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Power Window Switches which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

mm.  The Toyoda Gosei Occupant Safety Systems Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2003 through July 20, 2018, (a) indirectly purchased Occupant Safety System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Occupant Safety Systems manufactured or sold by a Defendant, any current or former subsidiary of

18

a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

nn. The Toyoda Gosei Constant Velocity Joint Boot Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2006 through July 20, 2018, (a) indirectly purchased Constant Velocity Joint Boot Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Constant Velocity Joint Boot Products(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

oo. The Toyoda Gosei Automotive Hoses Settlement Class is defined as: All Automobile Dealerships that, from May 1, 2003 through July 20, 2018, (a) indirectly purchased Automotive Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant, or (b) purchased Vehicles for resale that contained Automotive Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

pp. The Toyoda Gosei Body Sealing Products Settlement Class is defined as: All Automobile Dealerships that, from January 1, 2000 through July 20, 2018, (a) indirectly purchased Body Sealing Products manufactured or sold by a Defendant,

any current or former subsidiary of a Defendant, or any cocospirator of a Defendant, or (b) purchased Vehicles for resale that contained Body Sealing Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any cocospirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

qq.   The Toyoda Gosei Interior Trim Products Settlement Class is defined as: All Automobile Dealerships that, from June 1, 2004 through July 20, 2018, (a) indirectly purchased Interior Trim Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Interior Trim Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

rr.   The Toyoda Gosei Brake Hoses Settlement Class is defined as: All Automobile Dealerships that, from February 1, 2004 through July 20, 2018, (a) indirectly purchased Brake Hose(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Brake Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

ss.   The Usui Automotive Steel Tubes Settlement Class is defined as: All Automobile Dealerships that, from December 1, 2003 through January 11, 2018, (a) indirectly purchased Automotive Steel Tubes manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States, which included one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

tt.   The Valeo Access Mechanisms Settlement Class is defined as: All Automobile Dealers who, from January 1, 2002 through January 11, 2018, (a) indirectly purchased Access Mechanisms manufactured by Defendants, any current or former subsidiary or affiliate thereof, or any coconspirator, or (b) purchased Vehicles for resale in the United States that included one or more Access Mechanisms as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Access Mechanisms Settlement Class are Defendants, their parent companies, subsidiaries, and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

**Notice Plan Detail**

9.   **Notice Documents.**   Gilardi has reviewed the draft full-length Notice and the draft summary Notice to ensure compliance with the following guidelines regarding content, as outlined by Rule 23 of the Federal Rules of Civil Procedure:

a.   A brief explanation of the case, including the basic contentions or denials of the parties;

b.  A statement that the court will exclude the member from the class if the member so requests by a specific date;

c.  A procedure for the member to follow in requesting exclusion from the class;

d.  A statement that judgment, whether favorable or not, will bind all members who do not request exclusion; and

e.  A statement that any member who does not request exclusion may, if the member so desires, enter an appearance through counsel.

10.  A sample of the full-length Notice is attached as Exhibit 2.  A sample of the summary Notice is attached as Exhibit 3.

11.  The proposed notice program consists of the following elements:

a.  Direct notice via United States Postal Service Mail ("USPS Mail") to all class members in the indirect purchaser states for whom a mailing address is available.

   i.  For any class member that previously filed a valid claim in the initial round of Auto Dealer settlements in this litigation, the USPS contact address supplied in that valid claim form will be used for the purpose of direct notice in these settlements.

   ii.  As of September 3, 2019, Gilardi has processed a total of 6,232 claims with approximately 1,540 timely claims in the third round of Auto Dealer settlements, 1,262 timely claims in the second round of Auto Dealer settlements, and 3,430 claims in the first round of Auto Dealer settlements.

b.  Direct notice via email ("Email") to all class members for whom an electronic email address is available.

c.  Publication Notice in the print versions of the following industry magazines:

   i.  3x insertion in *Automotive News Magazine*

   ii.  1x insertion in *Auto Dealer Monthly Magazine*

   iii.  1x insertion in *Ward's Autoworld Magazine*

d.  Publication in the dealer edition e-newsletter disseminated by *Wards Autoworld Magazine.*

22

i. The *Ward's Autoworld* Dealer edition e-newsletter is sent to dealerships nationwide and includes regular news and features covering the U.S. and worldwide automotive manufacturing industry

e. Internet Banner advertising on websites for *Automotive News* and *Autodealer Monthly*.

f. Facebook banner and link advertising.

g. Twitter promoted tweet advertising

h. Party-neutral press release

i. Case-specific website.

j. Toll-free telephone services.

12. Gilardi believes the plan summarized above more than satisfies due process standards given the parameters of the settlement, information learned from Gilardi's research, and the results of the first three rounds of notice. The proposed notice plan provides the best practicable method to reach the class members and is consistent with many other class action notice plans that have been approved by federal courts in similarly situated matters. The plan includes direct notice via USPS First-Class mail and email to the all class members, supplemented by industry publications and online advertising likely to reach Class Members who might not receive direct notice.

**Direct Notice**

13. Whenever practicable, direct USPS mail or email is the preferred form of notice for class members in a class action. It is generally considered to deliver 100% reach, less returned or undeliverable mail ("RUM").

14. For the previous phases of notice, Gilardi worked with two separate specialty vendors to compile both an email address list and U.S.P.S. postal address list of every current consumer automotive dealership in the indirect purchaser states, and numerous addresses for dealerships that went out of business during the class period, but who may nevertheless have made a qualifying purchase and thus be eligible for participation in the claims process. For this phase of notice, Gilardi has purchased an updated nationwide dealer list including 11,083 postal addresses and 68,105 email addresses for every dealer located in the indirect purchaser states. Prior to the postal and email distribution of notice, Gilardi will cross-reference the new dealer lists against the old dealer lists and create a new list with all unique postal addresses and

23

email addresses found in the data. This will ensure the notice is provided to an over-inclusive group of potential class members.

15. The foundation of the Notice plan will be to print and mail a full Notice to each USPS address obtained and disseminate emails with the same Notice content to each email address obtained. For the USPS mailing addresses, Gilardi will run the records through the USPS National Change of Address system ("NCOA"), unless such a search has been performed within the last three months. The NCOA system provides updated addresses for all individuals or entities that have filed a change of address with the post office within the past four years. The NCOA procedure helps to ensure that we have the most current address on file with the USPS. By this means, we are to maximize the effectiveness of the direct mail and to minimize RUM.

16. In addition to the NCOA procedures, any postal addresses provided by claimants who submitted valid and timely claims in the first three rounds of dealership settlements will be used to provide Notice for the new settlements. Based on information provided by counsel, Gilardi understands that those dealerships who filed valid and timely claims will not need to file again unless it is necessary for them to provide additional data to support their claims in the new settlements. The case website will provide the ability for these claimants to supplement the data provided in their previous claim, but it will not be necessary in order for them to receive payment under the terms of the news Settlements.

17. After the NCOA update, Gilardi will cause direct notice to be sent via USPS mail to all database records associated with a mailing address. All RUM will be sorted and scanned. For RUM returned without a forwarding address, Gilardi will use Accurint (a division of Lexis-Nexis) to perform a basic "skip trace" search in order to retrieve the most accurate and updated information. The database will be updated with any new address found and the notice will be re-mailed to the updated addresses.

### Supplemental Notice Detail

18. To supplement the direct notice efforts, Gilardi has designed a publication notice program to provide notice to class members who may not otherwise receive direct notice. Publication will include the elements summarized in Paragraph 8, described in further detail below.

19. **Print Publication**. The notice plan contemplates publication in the print editions of *Wards Autoworld Magazine, Automotive News Magazine, and Auto Dealer Monthly Magazine.* Based on Gilardi's

24

research and information provided by the parties, I understand that these magazines target, and are read by, auto dealerships and the individuals that work within the industry.  They provide the best opportunity for the class member dealerships to be exposed to the class notice during the class period.

20.     **Banner and Link Advertising.** The notice plan will cause banner advertisements to be placed on industry specific websites for one to three months in various banner unit sizes as follows:

      a.    Automotive News - Run of Site (ROS) Top Leaderboard and Medium Rectangle split over 2-3 weeks;

      b.    Autodealer Monthly - Banner Embedded for 3 Months;

21.     Samples of some suggested banners that could be utilized are attached in Exhibit 4.

22.     **E-Newsletter Distribution**. The notice plan will further provide notice through a banner advertising placement in *Wards Autoworld* dealer edition e-newsletter.  As mentioned, the e-newsletter is sent to dealerships nationwide and includes regular news and features covering the U.S. and worldwide automotive manufacturing industry

23.     **Facebook Banner and Link Advertising**.  Gilardi will develop banner and text link ads to be targeted toward appropriate dealership pages on Facebook.  Samples of some suggested banners and links that could be utilized are attached in Exhibit 5.

24.     **Twitter Promoted Tweet Advertising**.  Gilardi will develop promoted tweets with an embedded case website link.  Promoted Tweets will be disseminated over a 30 day period with targeting that will utilize twitter handles of known auto dealerships, handles for dealership organizations such as NADA, and handles of industry publications such Autonews and Autoworld.  Samples of some suggested promoted tweet language that could be utilized is attached in Exhibit 6.

25.     **Press Release**. Gilardi will release a party-neutral press release with information about the litigation and proposed settlement. A press release is one of the most cost-effective means of transmitting notice; once released, a release remains available for 30 days to over 200,000 news outlets for distribution.

26.     **Website**. Gilardi will use the case-dedicated website, which has been and will be a source of reliable and accurate information for class members and the general public. The paid media campaign and press release will direct individuals to the case website.

27.    **Telephone Services**. Gilardi will continue to use a toll-free telephone number where class members and the public can call in and listen to an interactive voice recording with information about the litigation and settlement.

28.    Gilardi believes the notice program described above is suitable for these cases and is comparable to plans other federal courts have approved for similar cases. This plan is also comparable to the plans used in the initial three rounds of dealership settlements in this MDL litigation.

**Summary**

29.    The objective of the proposed notice plan described above and attached in Exhibit 7, is to provide the best notice practicable, consistent with the requirements set forth in Rule 23 and other applicable State statutes, to reach a large percentage of the class while meeting or exceeding the requirements of due process and all applicable state laws and court rules.

30.    The recommended plan is centered on direct notice to a large majority, if not all, class members in the indirect purchaser states through both USPS mail and email. Direct notice will be supplemented by leveraging media specific to the auto industry (and new car dealerships in particular), auto industry newsletters publication, banner advertising on auto industry websites, banner and text advertising on Facebook, promoted tweet advertising on Twitter, a targeted press release and a case specific website with claims filing functionality.

31.    Many courts have held that notice plans estimated to reach a minimum of 70% of the class are sufficient and thus comply with Rule 23. When implemented, the plan is designed to cost effectively reach more than 95% of the class members in the indirect purchaser states, while providing them with an opportunity to review their due process rights and file claims for payment. The approach provides multiple channels for class members to be directed to the case website while also allowing for the ability to scale up or reduce the budget during the notice period if additional defendants settle.

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is
2    true and correct and that this declaration was executed this 18th day of September 2019, at San Rafael,
3    California.

4
5                                                                          _____
6                                                                          Alan Vasquez
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

27

# Exhibit – 1



**EXHIBIT - 1**

**Notice Plans Designed and Implemented by Alan Vasquez**

**Automotive**

Automobile Antitrust Cases I and II , No. JCCP 4298 and 4303 (San Francisco Sup. Ct., CA)

New Motor Vehicles Canadian Export Antitrust Litigation , No. MDL 03-1532 (Dist. Court of Maine) & New Motor Vehicles Canadian Export

Antitrust Litigation, No. 2:03-MD-1532-DBH (Dist. Court of Maine)

In Re: Automotive Parts Antitrust Litigation, Master File No. 12-md-02311 (E.D. MI, Southern Division)

**Entertainment**

Herbert et al. v. Endemol USA, Inc. et al. , Case No. 2:07-cv-03537-JHN-VBKx (C.D. Cal.)

Couch v. Telescope Inc., et al, Case No. 2:07-cv-03916-JHN-VBKx (C.D. Cal.)

McDonald v. RealNetworks, Inc. , No. 816666 (Orange County Sup. Ct., CA)

Pecover et al. v. Electronic Arts Inc. , No. 08-cv-02820 CW (N.D. Cal.)

In re NCAA Student-Athlete Name & Likeness Licensing Litigation, Case No. 4:09-cv-1967 CW (NC) (N.D. Cal.)

Higgins v. Universal City Studios, LLC, Case No. BC499180 (Los Angeles County Superior Ct.)

**Environment**

Koepf et al. v. Hanjin Shipping, Co. et al., No. CGC-07-469379 (San Francisco County Sup. Ct., CA)

Loretz et al. v. Regal Stone Limited et al., No. 07-5800-SC (N.D. Cal.)

Tarantino et al. v. Regal Stone et al., No. CGC-07-469379 (San Francisco County Sup. Ct., CA)

**Government**

McKesson Governmental Entities Average Wholesale Price Litigation, No. 1:08-cv-10843-PBS (D. Mass.)

**Technology**

SRAM Antitrust Litigation, No. 4:07-MD-01819-CW (N.D. Cal)

**Telecommunications**

White v. Cellco Partnership , No. RG04-137699 (Alameda County Sup. Ct., CA)

In re Universal Service Fund Telephone Billing Practices Litig., MDL No. 1468 (D. Kan.)

Ardon v. City of Los Angeles, Case No. BC363959 (Los Angeles County Sup. Ct.)

**Consumer Products**

Natalie Pappas v. Naked Juice Co. of Glendora, Inc. Case No. LA CV 11-08276-JAK (C.D. Cal)

Barbara Marciano v. Schell & Kampeter, Inc. et al No. 12-cv-02708-SJF-AKT (E.D. NY)

Mattel, Inc., Toy Lead Paint Products Liability Litigation, No. 2:07-ML-01897-DSF-AJW (S.D. Cal.)

Gallucci v. Boiron, Inc. et al., No. 11-cv-2039-JAH (NLSx)

Nigh v. Humphreys Pharmacal, Incorporated et al., Case No. 3:12-cv-02714-MMA-DHB

In re: Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation, No. 09-MD-2023

In Re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation, Civil Litigation No. 4:08-md-01907-ERW

Eliason v. Gentek Building Products, Inc., and Associated Materials, Inc. , No. 1:10-cv-02093 (N.D. Ohio)

Hart v. Louisiana-Pacific Corporation , No. 2:08-cv-00047 (E.D.N.C.)

In re Optical Disk Drive Antitrust Litigation, Case No. 3:10-MD-2143-RS MDL (N.D. Cal)

In re: Lithium Ion Batteries Antitrust Litigation, Case No. 4:13-md-02420-YGR (N.D. Cal)

**Debt Collection Practices**

Adams, et al., v. AllianceOne Receivables Management, Inc. (Case No. 08-CV-0248)

Pepper v. Midland Credit Management, Inc. and Encore Capital Group, Inc., No. 37-2011-00088752 (San Diego Sup. Ct. Ca)

**Health**

In Re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation, Master Docket No. 1:13-cv-09116 (E.D. IL)

# Exhibit – 2

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

*In re Automotive Parts Antitrust Litigation*, No. 12-md-02311

**If You Are an Automobile Dealership that Purchased New Vehicles or Bought Certain Parts
for a Vehicle in the U.S. Since 1990**

**You Could Receive Money From Settlements of Class Actions**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

- Your legal rights are affected whether you act or don't act. Read this Notice carefully.

- Lawsuits involving the prices of certain vehicle component parts have been settled with certain Defendants in various class actions in this litigation ("Settling Defendants"). The Settling Defendants are identified below.

- You can make a claim for money benefits if you are an automobile dealership that indirectly purchased certain component parts and/or purchased new vehicles for resale containing these parts ("Dealers") in the District of Columbia or one or more of the following states: Arizona, Arkansas, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

- This is the **fourth group** of settlements ("Settlements") that provide benefits to eligible Dealers. The Settlements total more than $88 million.

- The Settlements and Settling Defendants involved in this Notice are:

  o ALPHA Corporation and Alpha Technology Corporation (collectively, "Alpha") have paid $852,000.00 to settle claims of eligible Dealers that, from January 1, 2002 through the January 12, 2018, (a) indirectly purchased Access Mechanism(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any coconspirator of a Defendant, or (b) purchased Vehicles for resale that contained Access Mechanisms manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant.

  o Bosal Industries-Georgia, Inc. ("Bosal") has paid $48,000.00 to settle claims of Eligible Dealers that, during the period from and including January 1, 2002 through August 6, 2019, (a) indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale, which included Exhaust Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

  o Brose Schließsysteme GmbH & Co. Kommanditgesellschaft and Brose North America (collectively, "Brose") have paid $720,000.00 to settle claims of eligible Dealers that, during the period from and including January 1, 2004 through June 14, 2018, (a) indirectly purchased Side-Door Latch(es) and/or Latch Minimodul(es) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Side-Door Latch(es) and/or Latch Minimodul(es) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o Calsonic Kansei Corporation and CalsonicKansei North America, Inc. (collectively "Calsonic") have paid $3,512,160 to settle claims of eligible Dealers allocated as follows:

  (1) $1,764,509.19 to settle claims of eligible Dealers that, during the period from and including January 1, 2000 through March 30, 2018, (a) indirectly purchased Radiators manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Radiators manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator.

  (2) $120,115.87 to settle claims of eligible Dealers that, during the period from and including November 1, 2002 through March 30, 2018, (a) indirectly purchased ATF Warmer(s) and Oil Cooler(s) manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained ATF Warmer(s) and Oil Cooler(s) manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator.

  (3) $1,627,534.94 to settle claims of eligible Dealers that, during the period from and including May 1, 1999 through March 30, 2018, (a) indirectly purchased Air Conditioning Systems manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Air Conditioning Systems manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator.

o Continental Automotive Electronics LLC, Continental Automotive Korea Ltd., and Continental Automotive Systems, Inc. (collectively, "Continental") have paid $1,200,000.00 to settle claims of eligible Dealers that, from January 1, 2001 through February 28, 2018, (a) indirectly purchased Instrument Panel clusters manufactured or sold by Defendants, or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States that contained Instrument Panel Clusters which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o Corning International Kabushiki Kaisha and Corning Incorporated (collectively, "Corning") have paid $8,400,000.00 to settle claims of eligible Dealers that, from January 1, 1990 through March 7, 2019, (a) indirectly purchased one or more Ceramic Substrate(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Ceramic Substrate(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o Delphi Technologies PLC and Delphi Powertrain Systems, LLC (collectively, "Delphi") have paid $240,000.00 to settle claims of eligible Dealers that, from January 1, 2000 through July 15, 2019, (a) indirectly purchased Ignition Coils manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles in the United States for resale, that contained one or more Ignition Coil(s), which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o Faurecia Abgastechnik GmbH, Faurecia Systèmes d'Échappement, Faurecia Emissions Control Technologies, USA, LLC, and Faurecia Emissions Control Systems, N.A. LLC f/k/a Faurecia Exhaust Systems, Inc. (collectively, "Faurecia") have paid $468,000.00 to settle claims of eligible Dealers that, from January 1, 2002 through December 8, 2017, (a) indirectly purchased one or more Exhaust System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicle(s) for resale containing one or more

Exhaust System(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant.

o   Green Tokai Co., Ltd. ("Green Tokai") has paid $300,000.00 to settle claims of eligible Dealers that, from January 1, 2000, through September 18, 2018, (a) indirectly purchased Body Sealing Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Body Sealing Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or affiliate thereof, or any co-conspirator of a Defendant.

o   Keihin Corporation and Keihin Norther America (collectively, "Keihin") have paid $264,000.00 to settle claims of eligible Dealers that, from and including January 1, 2000 through May 31, 2018, (a) indirectly purchased Fuel Injection systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or () purchased Vehicles for resale that contained Fuel Injection Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   KYB Corporation (f/k/a Kayaba Industry Co., Ltd.) and KYB Americas Corporation (collectively, "KYB") have paid $9,120,000.00 to settle claims of eligible Dealers that, from January 1, 1995 through November 6, 2018, (a) indirectly purchased Shock Absorber(s) which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Shock Absorbers which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   MAHLE Behr GmbH & Co. KG and MAHLE Behr USA Inc. (collectively, "MAHLE Behr") have paid $468,000.00 to settle claims of eligible Dealers that during the period from and including May 1, 1999 through December 20, 2017, (a) indirectly purchased one or more Air Conditioning System(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained one or more Air Conditioning System(s), which were manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof, or co-conspirator.

o   Maruyasu Industries, Co., Ltd. and Curtis-Maruyasu America, Inc. (collectively, "Maruyasu") have paid $1,680,000.00 to settle claims of eligible Dealers allocated as follows:

    (1)   $34,272.00 to settle claims of eligible Dealers that, from and including January 1, 2000 through November 2, 2018, (a) indirectly purchased Fuel Injection systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Fuel Injection Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

    (2)   $1,645,728.00 to settle claims of eligible Dealers that, from December 1, 2003 through November 2, 2018, (a) indirectly purchased Automotive Steel Tubes manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States, which included one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant.

o   Meritor, Inc. f/k/a ArvinMeritor, Inc. (collectively, "Meritor") have paid $1,680,000.00 to settle claims of eligible Dealers that, during the period from January 1, 2002 through July 16, 2018, (a) indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any current or former subsidiary

or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale, which included Exhaust Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Mikuni Corporation ("Mikuni") has paid $1,056,000.00 to settle claims of eligible Dealers allocated as follows:

(1)   $844,800.00 to eligible Dealers that, during the period from and including January 1, 2000 through June 28, 2019, (a) indirectly purchased Fuel Injection Systems manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one or more Fuel Injection System(s) as a component part, or indirectly purchased one or more Fuel Injection System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant

(2)   $211,200.00 to eligible Dealers that, during the period from and including January 1, 2000 through June 28, 2019, (a) indirectly purchased Valve Timing Control Device(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one or more Valve Timing Control Device(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Mitsubishi Heavy Industries, Ltd. and Mitsubishi Heavy Industries Climate Control, Inc. (collectively, "Mitsubishi") have paid $2,160,000.00 to settle claims of eligible Dealers that, during the period from and including May 1, 1999 through the June 14, 2018, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Air Conditioning Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Nachi Fujikoshi has paid $1,020,000.00 to settle claims of eligible Dealers that, during the period from and including January 1, 2000 through August 12, 2019, purchased a Vehicle in the United States for resale, which included, as a component part, one or more Automotive Bearings, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any alleged co-conspirator of a Defendant; or indirectly purchased, as a replacement part, one or more Automotive Bearings, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any alleged co-conspirator of a Defendant. .

o   NGK Spark Plug Co., Ltd. and NGK Spark Plugs (U.S.A.), Inc. (collectively, "NGK") have paid $4,020,000.00 to settle claims of eligible Dealers that, from January 1, 2000 through January 24, 2018, (a) indirectly purchased Spark Plug(s), Standard Oxygen Sensor(s), or Air Fuel Ratio Sensor(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Spark Plug(s), Standard Oxygen Sensor(s), or Air Fuel Ratio Sensor(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant.

o   Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic") have paid $240,000.00 to settle claims of eligible Dealers that, from May 1, 1999 through March 11, 2019, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale which included one or more Air Conditioning System(s) as a component part, or indirectly

purchased one or more Air Conditioning System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Sanden Automotive Components Corporation, Sanden Automotive Climate Systems Corporation, and Sanden International (U.S.A.) Inc. (collectively, "Sanden") have paid $2,400,000.00 to settle claims of eligible Dealers that, from May 1, 1999 through February 8, 2018, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by Defendants, any current or former subsidiary or affiliate of Defendants, or any co-conspirator, or (b) purchased Vehicles for resale that contained Air Conditioning System(s), which were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator.

o   Sanoh Industrial Co., Ltd. and Sanoh America, Inc. (collectively, "Sanoh") have paid $2,640,000.00 to settle claims of eligible Dealers that, during the period from and including December 1, 2003 through April 10, 2019, (a) indirectly purchased Automotive Steel Tube(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Showa Corporation and American Showa, Inc. (collectively, "Showa"), have paid $4,440,000.00 to settle claims of eligible Dealers allocated as follows:

   (1)   $1,305,390.12 to eligible Dealers that, from January 1, 2000 through July 19, 2019, (a) indirectly purchased one or more Electric Powered Steering Assembly(ies) which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased a Vehicle for resale that contained Electric Powered Steering Assembly(ies) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant.

   (2)   $3,134,609.88 to eligible Dealers that, from January 1, 1995 through July 19, 2019, (a) indirectly purchased one or more Shock Absorber(s) which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant, or (b) purchased a Vehicle for resale that contained one or more Shock Absorber(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant.

o   SKF USA Inc. ("SKF") has paid $2,400,000.00 to settle claims of eligible Dealers that, from January 1, 2000 through June 28, 2019, (a) indirectly purchased Automotive Bearing(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that included one or more Automotive Bearing(s) as a component part which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Stanley Electric Co, Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc. (collectively, "Stanley") have paid $4,800,000.00 to settle claims of eligible Dealers allocated as follows:

   (1)   $3,889,541.05 to eligible Dealers that, from July 1, 2002 through November 2, 2018, (a) indirectly purchased Automotive Lamp(s) as a component part, or indirectly purchased Automotive Lamp(s) as a replacement part, which were manufactured or sold by a Defendant, or any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Automotive Lamp(s)

manufactured or sold by a Defendant or any current or former subsidiary, affiliate thereof or co-conspirator.

(2) $910,458.95 to eligible Dealers that, from July 1, 1998 through November 2, 2018, (a) indirectly purchased HID Ballast(s) as a component part, or indirectly purchased HID Ballast(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained HID Ballasts manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Takata Holdings, Inc., through Joseph J. Farnan, Jr. as the trustee of the Reorganized TK Holdings Trust (collectively, "TKH") has agreed to a $16,800,000.00 general, unsecured, non-priority claim under the TKH bankruptcy plan, to settle the claims of eligible Dealers that, from January 1, 2003 through November 27, 2018, (a) indirectly purchased Occupant Safety Restraint Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Occupant Safety Restraint Systems which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Tenneco Inc., Tenneco GmbH, and Tenneco Automotive Operating Co., Inc. (collectively, "Tenneco") have paid $5,520,000.00 to settle claims of eligible Dealers that, from January 1, 2002 through February 26, 2018, (a) indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Exhaust System(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or co-conspirator.

o   Tokai Rika, Co. Ltd. and TRAM, Inc. d/b/a/ Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika") have paid $10,800,000.00 to settle claims of eligible Dealers allocated as follows:

(1) $431,550.97 to eligible Dealers that, from January 1, 2000 through March 29, 2018, (i) indirectly purchased Heater Control Panel(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (ii) purchased Vehicles for resale that contained Heater Control Panel(s) as a component part, or indirectly purchased one or more Heater Control Panel(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant.

(2) $9,077,509.67 to eligible Dealers that, from January 1, 2003 through March 29, 2018, (i) indirectly purchased Occupant Safety Restraint Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant, or (ii) purchased Vehicles for resale that contained one or more Occupant Safety Restraint System(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(3) $1,076,924.41 to eligible Dealers that, from January 1, 2000 through March 29, 2018, (i) indirectly purchased Switches manufactured or sold by a Defendant or any co-conspirator of a Defendant, or (ii) purchased Vehicles for resale, which included one or more Switch(es) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(4) $214,014.95 to eligible Dealers that, from September 1, 2000 through March 29, 2018, (i) indirectly purchased Steering Angle Sensor(s) manufactured or sold by a Defendant, or any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant, or (ii) purchased Vehicles for resale, which included one or more Steering Angle Sensor(s) as a component part, or indirectly purchased one or more Steering Angle Sensor(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o Toyo Denso Co., Ltd. and Weastec, Inc. (collectively "Toyo Denso") have paid $1,632,000.00 to settle claims of eligible Dealers allocated as follows:

(1) $240,000.00 to eligible Dealers that, during the period from January 1, 2000 through April 26, 2018, (a) indirectly purchased Ignition Coil(s), which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Ignition Coils which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(2) $1,392,000.00 to eligible Dealers that, during the period from and including January 1, 2003 through April 26, 2018, (a) indirectly purchased Power Window Switches, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Power Window Switches which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., TG Missouri Corp., TG Kentucky, LLC, and TG Fluid Systems USA Corp. (collectively, "Toyoda Gosei") have paid $14,160,000.00 to settle claims of eligible Dealers allocated as follows:

(1) $1,830,860.57 to eligible Dealers that, from January 1, 2003 through July 20, 2018, (a) indirectly purchased Occupant Safety System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Occupant Safety Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant.

(2) $226,264.76 to eligible Dealers that, from January 1, 2006 through July 20, 2018, (a) indirectly purchased Constant Velocity Joint Boot Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Constant Velocity Joint Boot Products(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(3) $1,714,157.85 to eligible Dealers that, from May 1, 2003 through July 20, 2018, (a) indirectly purchased Automotive Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant, or (b) purchased Vehicles for resale that contained Automotive Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(4) $8,573,258.96 to eligible Dealers that, from January 1, 2000 through July 20, 2018, (a) indirectly purchased Body Sealing Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant, or (b) purchased Vehicles for resale that contained Body Sealing Products manufactured or sold

by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(5) $1,607,208.53 to eligible Dealers that, from June 1, 2004 through July 20, 2018, (a) indirectly purchased Interior Trim Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Interior Trim Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(6) $208,249.33 to eligible Dealers that, from February 1, 2004 through July 20, 2018, (a) indirectly purchased Brake Hose(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Brake Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Usui Kokusai Sangyo Kaisha, Ltd. and Usui International Corporation (collectively "Usui") have paid $1,680,000.00 to settle claims of eligible Dealers that, from December 1, 2003 through January 11, 2018, (a) indirectly purchased Automotive Steel Tubes manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States, which included one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

o   Valeo S.A. ("Valeo") has paid $240,000.00 to settle claims of eligible Dealers that, from January 1, 2002 through January 11, 2018, (a) indirectly purchased Access Mechanisms manufactured by Defendants, any current or former subsidiary or affiliate thereof, or any coconspirator, or (b) purchased Vehicles for resale in the United States that included one or more Access Mechanisms as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

- The Settling Defendants and certain affiliates have also agreed to provide certain cooperation in the cases against the remaining Defendants.

- The final judgments and/or settlement agreements with respect to certain of the Settling Defendants will provide for additional non-monetary relief in the form of an agreement or injunction against these Settling Defendants (including certain affiliates of certain Settling Defendants) prohibiting certain conduct with respect to the identified parts for certain periods from the date of entry of the final judgment or preliminary approval. The terms of this additional relief are contained in the proposed final judgments and/or settlement agreements relating to these Settling Defendants, and may be viewed at the Settlement Website, www.AutoDealerSettlement.com.

- The Settling Defendants deny that they are liable and have asserted a number of defenses to the Dealers' claims but have settled to avoid the cost and risk of trials.

- If you are a Dealer as defined in this Notice and are a member of one or more of the Classes described in this Notice, the Settlements will affect the rights of your dealership.

## YOUR LEGAL RIGHTS AND OPTIONS IN THESE SETTLEMENTS

| | |
|---|---|
| **RELY ON PRIOR PROOF OF CLAIM TO PARTICIPATE IN THE SETTLEMENTS** | **To remain in the Settlement Classes, you do not need to take any further action at this time.  If your dealership filed a valid Proof of Claim in any of the first three rounds of dealership settlements in this litigation, you may rely on that Proof of Claim and do nothing further to participate in the current settlements.**  If you choose this option, the information you provided in the prior Proof of Claim will be used to determine your dealership's share in the net proceeds of the current proposed Settlements (if your prior Proof of Claim was timely, valid, and your dealership is entitled to a distribution under the Plans of Allocation (described below in response to Question No. 9)) and if and to the extent that the proposed Settlements are approved by the Court. Your dealership will be bound by the judgment and release to be entered by the Court as described below (the "Judgment").  Your dealership may also update the information it provided through the prior Proof of Claim by submitting an updated Proof of Claim form that must be postmarked or submitted electronically, by April 17, 2020. |
| **FILE A PROOF OF CLAIM BY APRIL 17, 2020 TO PARTICIPATE IN THE SETTLEMENTS** | **To remain in the Settlement Classes, you do not need to take any further action at this time. However, to share in the Settlement Funds, and only if your dealership did not submit a Proof of Claim form in the prior dealership settlements in this litigation (for more information see Question 8, below), your dealership must submit a Proof of Claim form that is available on the Settlement Website at www.AutoDealerSettlement.com, and submit it by April 17, 2020.**  If you choose this option, your dealership will share in the net proceeds of the proposed Settlements if its Proof of Claim is timely, valid, and your dealership is entitled to a distribution under the Plans of Allocation (described below in response to Question No. 9) and if and to the extent that the proposed Settlements are approved by the Court. Your dealership will be bound by the judgment and release to be entered by the Court as described below (the "Judgment").  To be valid, your dealership's request must contain the information required by the Proof of Claim form and be postmarked, or submitted electronically, by April 17, 2020. |
| **EXCLUDE YOUR DEALERSHIP FROM THE SETTLEMENTS BY NOVEMBER 22, 2019** | If your dealership does not want to be included in one or more of the Settlements Classes, it may request to be excluded. If your dealership timely submits a valid request for exclusion, it will not share in the Settlement Funds from the corresponding Settlement, and it will not be bound by the corresponding Judgment(s).  It will then be your dealership's responsibility to pursue any of the claims that it preserves by opting out of one or more of the Settlement Classes. To be valid, the request for exclusion must contain the information set forth in response to Question 11 below and be postmarked by November 22, 2019. |
| **OBJECT TO THE SETTLEMENTS BY NOVEMBER 22, 2019** | If your dealership wishes to object to one or more of the Settlements or the request for fees, expenses, and service awards, it may (as discussed below) write to the Court and counsel about why it objects. It is possible that the Settlements and request for fees, expenses, and service awards will be approved despite your objection. To be considered, your dealership's objection must be made according to the procedures set forth in response to Question 16 below and be postmarked by November 22, 2019. |
| **ATTEND THE FINAL APPROVAL HEARING TO BE HELD ON DECEMBER 10, 2019** | The Court will hold a hearing to decide whether to approve the Settlements and the request for attorney's fees, expenses, and service awards. You may attend and ask the Court's permission to speak, but you don't have to participate in the hearing in order to attend. To request to speak at the Final Approval Hearing, you must follow the procedures set forth in response to Question 20 below and submit a request to speak that must be postmarked, or submitted electronically, by November 29, 2019. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court still has to decide whether to approve the Settlements.  Payments will be made only if the Court approves the Settlements and that approval is upheld in the event of any appeal.

| WHAT THIS NOTICE CONTAINS |
|---|

BASIC INFORMATION ........................................................................................................................... 4
   1.  WHY IS THERE A NOTICE? .......................................................................................................... 4
   2.  WHAT ARE THESE LAWSUITS ABOUT? ................................................................................. 5
   3.  WHY ARE THESE CASES CLASS ACTIONS? .......................................................................... 5
   4.  WHY ARE THERE PROPOSED SETTLEMENTS? .................................................................... 5
   5.  HOW DO I KNOW WHETHER MY DEALERSHIP IS PART OF THE SETTLEMENTS? ........... 6
   6.  I'M STILL NOT SURE IF MY DEALERSHIP IS INCLUDED ................................................... 9

THE SETTLEMENT BENEFITS—WHAT YOUR DEALERSHIP GETS ........................................... 9
   7.  WHAT DO THE SETTLEMENTS PROVIDE? ............................................................................ 9
   8.  HOW MAY MY DEALERSHIP RECEIVE A PAYMENT? ....................................................... 11
   9.  HOW MUCH WILL MY PAYMENT BE? .................................................................................. 11
  10.  WHAT IS MY DEALERSHIP GIVING UP TO STAY IN THE SETTLEMENT CLASSES? ........ 11

EXCLUDING YOUR DEALERSHIP FROM THE SETTLEMENTS .................................................. 12
  11.  HOW DO I GET MY DEALERSHIP OUT OF THE SETTLEMENTS? ...................................... 12
  12.  CAN MY DEALERSHIP REMAIN IN THE SETTLEMENT FOR SOME DEFENDANTS AND
        EXCLUDE ITSELF FROM OTHERS? ...................................................................................... 13
  13.  IF I EXCLUDE MY DEALERSHIP, CAN IT GET MONEY FROM THE SETTLEMENTS? ....... 13

THE LAWYERS REPRESENTING AUTO DEALERS ....................................................................... 13
  14.  DOES MY DEALERSHIP HAVE A LAWYER IN THESE CASES? .......................................... 13
  15.  HOW WILL THE LAWYERS BE PAID? .................................................................................. 13

OBJECTING TO THE SETTLEMENTS OR THE REQUESTS FOR
ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS ........................................................ 13
  16.  HOW DOES MY DEALERSHIP COMMENT ON OR OBJECT TO THE SETTLEMENTS? ....... 13
  17.  WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING? ........................... 14

THE FINAL APPROVAL HEARING .................................................................................................. 14
  18.  WHEN AND WHERE WILL THE COURT DECIDE WHETHER
        TO APPROVE THE SETTLEMENTS? ...................................................................................... 14
  19.  DO I HAVE TO COME TO THE HEARING? ............................................................................ 15
  20.  MAY I SPEAK AT THE HEARING? ......................................................................................... 15

IF YOUR DEALERSHIP DOES NOTHING ....................................................................................... 15
  21.  WHAT HAPPENS IF MY DEALERSHIP DOES NOTHING? ................................................... 15

GETTING MORE INFORMATION ..................................................................................................... 15
  22.  ARE THERE MORE DETAILS ABOUT THE SETTLEMENTS AND THE
        REQUEST FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS? ..................... 15
  23.  HOW DO I GET MORE INFORMATION? ................................................................................. 16
  24.  CAN I UPDATE MY DEALERSHIP'S ADDRESS? ................................................................... 16

**BASIC INFORMATION**

## 1. WHY IS THERE A NOTICE?

This Notice informs you about the partial Settlements reached in some of the cases that are included in this litigation. The Settlements may benefit Dealers who, during the relevant time periods, purchased a new vehicle containing, or purchased one or more of the following parts:

> Access Mechanisms, Air Conditioning Systems, ATF Warmers, Automotive Hoses, Automotive Lamps, Automotive Steel Tubes, Bearings, Body Sealing Products, Brake Hoses, Ceramic Substrates, Constant Velocity Joint Boots,, Electronic Power Steering Assemblies, Exhaust Systems, Fuel Injection Systems, Heater Control Panels, HID Ballasts, Ignition Coils, Instrument Panel Clusters, Interior Trim Products, Occupant Safety Restraint Systems, Power Window Switches, Radiators, Shock Absorbers, Side Door Latches, Spark Plugs, Steering Angles Sensors, Switches, and Valve Timing Control Devices

manufactured by one or more of the Settling Defendants and/or their predecessors, subsidiaries and affiliates or those alleged to be their co-conspirators. For more information about these parts, you may review the settlement agreements at www.AutoDealerSettlement.com.

The term "Dealer" or "Automobile Dealer" means an entity or person authorized to engage in the business of selling and / or leasing new vehicles at retail in the United States. You may also have been transferred or acquired claims that would otherwise be released as part of the Settlements. **Most Dealers in the states set out in Question 2 below and the District of Columbia are eligible to make a claim for monetary benefits in addition to the non-monetary benefits that are available nationwide.**

The Court sent your dealership this Notice because, as a possible Class member, your dealership has a right to know about the Settlements and about its options, before the Court decides whether to finally approve the Settlements. This Notice explains the lawsuits, the Settlements, and your dealership's legal rights.

The Court in charge is the United States District Court for the Eastern District of Michigan, and the litigation relates to separate class actions within the lead case known as *In re Automotive Parts Antitrust Litigation*, 12-md-02311. The Dealers who sued are called the "Plaintiffs" or the "Dealership Plaintiffs." The companies they sued in these cases are called the "Defendants." As described above, settlements have been reached with the "Settling Defendants."

## 2. WHAT ARE THESE LAWSUITS ABOUT?

The separate lawsuits claim that the Defendants in each lawsuit conspired to fix, maintain, and artificially raise the price of component parts at issue in each lawsuit. The lawsuits claim that, as a result of the relevant Defendants' conduct, Dealers paid more than they should have for the parts at issue in that lawsuit and paid more for the new vehicles in which those parts are contained. The lawsuits also allege that Dealers were unable to pass on all of these increased costs to their customers. These cases are proceeding as class actions for monetary recovery for Dealers in the District of Columbia and one or more of the following states: Arizona, Arkansas, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin(the "Included States"). The lawsuits also seek nationwide injunctive relief.

The Settling Defendants and their relevant affiliates deny these claims and have asserted various defenses. The Court has not yet decided who is right.

As noted above, the Settling Defendants are: Alpha, Bosal, Brose, Calsonic, Continental, Corning, Delphi, Faurecia, Green Tokai, Keihin, KYB, MAHLE Behr, Maruyasu, Meritor, Mikuni, Mitsubishi, Nachi, NGK, Panasonic, Sanden, Sanoh, Showa, SKF, Stanley, TKH, Tenneco, Tokai Rika, Toyo Denso, Toyoda Gosei, Usui, and Valeo.

There may be other Defendants not yet identified who have not settled.  This is the fourth group of Settlements preliminarily approved by the Court in the actions brought by the Dealership Plaintiffs on behalf of themselves and other Dealers. The cases continue against the other Defendants who have not settled ("Non-Settling Defendants).

## 3.   WHY ARE THESE CASES CLASS ACTIONS?

In class actions, one or more individuals or companies called "Class Representatives" sue on behalf of themselves and others with similar claims.  All of these individuals or companies together are the "Class" or "Class Members."  One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.  United States District Judge Marianne O. Battani is in charge of these class actions.

## 4.   WHY ARE THERE PROPOSED SETTLEMENTS?

All parties in litigation face an uncertain outcome. The continuation of the cases against the Settling Defendants could result in a judgment greater than these Settlements. However, continuing the cases could result in no recovery or in a recovery that is less than the Settlements. The Settlements provide immediate benefit to the Class Members, and will avoid the delays that could occur in the event of contested trials and appeals.  Based on these factors, the Dealer Class Representatives and their attorneys have concluded that the Settlements are in the best interests of the Class Members.

The cases will proceed against any Non-Settling Defendants.  Additional money may become available as a result of a trial or future settlements.  Alternatively, the cases may be resolved in favor of the Non-Settling Defendants and no additional money may become available.  There is no guarantee about what will happen.

## 5.   HOW DO I KNOW WHETHER MY DEALERSHIP IS PART OF THE SETTLEMENTS?

Your dealership is part of one or more of the Settlements if it is a Dealer and falls within the definition of one or more of the Settlement Classes approved by Judge Marianne O. Battani. The Settlement Class definitions are set forth below.  For the purposes of only this Paragraph 5, the term "Defendants" as used below shall be as defined in the applicable settlement agreements:

(A) The Alpha Access Mechanisms Class is defined as:

> All Automobile Dealerships that, from January 1, 2002 through the January 12, 2018, (a) indirectly purchased Access Mechanism(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any cococonspirator of a Defendant, or (b) purchased Vehicles for resale that contained Access Mechanisms manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant.

(B) The Bosal Exhaust Systems Settlement Class is defined as:

> All Automobile Dealerships that, during the period from and including January 1, 2002 through August 6, 2019, (a) indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale, which included Exhaust Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(C) The Brose Side Door Latches Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including January 1, 2004 through June 14, 2018, (a) indirectly purchased Side-Door Latch(es) and/or Latch Minimodul(es) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Side-Door Latch(es) and/or Latch Minimodul(es) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(D) The Calsonic Radiators Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including January 1, 2000 through March 30, 2018, (a) indirectly purchased Radiators manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Radiators manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator. Excluded from the Radiators Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(E) The Calsonic ATF Warmers Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including November 1, 2002 through March 30, 2018, (a) indirectly purchased ATF Warmer(s) and Oil Cooler(s) manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained ATF Warmer(s) and Oil Cooler(s) manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator. Excluded from the ATF Warmers Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(F) The Calsonic Air Conditioning Systems Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including May 1, 1999 through March 30, 2018, (a) indirectly purchased Air Conditioning Systems manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Air Conditioning Systems manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator. Excluded from the Air Conditioning Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(G) The Continental Instrument Panel Clusters Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2001 through February 28, 2018, (a) indirectly purchased Instrument Panel clusters manufactured or sold by Defendants, or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States that contained Instrument Panel Clusters which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(H) The Corning Ceramic Substrates Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 1990 through March 7, 2019, (a) indirectly purchased one or more Ceramic Substrate(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Ceramic Substrate(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries, and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(I)   The Delphi Ignition Coils Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2000 through July 15, 2019, (a) indirectly purchased Ignition Coils manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles in the United States for resale, that contained one or more Ignition Coil(s), which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(J)   The Faurecia Exhaust Systems Settlement Class is defined as:

All Automobile Dealers that, from January 1, 2002 through December 8, 2017, (a) indirectly purchased one or more Exhaust System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicle(s) for resale containing one or more Exhaust System(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Exhaust Systems directly or for resale.

(K) The Green Tokai Body Sealing Products Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2000, through September 18, 2018, (a) indirectly purchased Body Sealing Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Body Sealing Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or affiliate thereof, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(L)   The Keihin Fuel Injection Systems Settlement Class is defined as:

All Automobile Dealerships that, from and including January 1, 2000 through May 31, 2018, (a) indirectly purchased Fuel Injection systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or {b) purchased Vehicles for resale that contained Fuel Injection Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(M) The KYB Shock Absorbers Settlement Class is defined as:

> All Automobile Dealerships that, from January 1, 1995 through November 6, 2018, (a) indirectly purchased Shock Absorber(s) which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Shock Absorbers which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(N) The MAHLE Behr Air Conditioning Systems Settlement Class is defined as:

> All Automobile Dealers that during the period from and including May 1, 1999 through December 20, 2017, (a) indirectly purchased one or more Air Conditioning System(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained one or more Air Conditioning System(s), which were manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof, or co-conspirator. Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Air Conditioning Systems only directly from a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator.

(O) The Maruyasu Fuel Injection Systems Settlement Class is defined as:

> All Automobile Dealerships that, from and including January 1, 2000 through November 2, 2018, (a) indirectly purchased Fuel Injection systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Fuel Injection Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(P) The Maruyasu Automotive Steel Tubes Settlement Class is defined as:

> All Automobile Dealerships that, from December 1, 2003 through November 2, 2018, (a) indirectly purchased Automotive Steel Tubes manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States, which included one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(Q) The Meritor Exhaust Systems Settlement Class is defined as:

> All Automobile Dealerships that, during the period from January 1, 2002 through July 16, 2018, (a) indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale, which included Exhaust Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are

Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(R) The Mikuni Fuel Injection Systems Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including January 1, 2000 through June 28, 2019, (a) indirectly purchased Fuel Injection Systems manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one or more Fuel Injection System(s) as a component part, or indirectly purchased one or more Fuel Injection System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(S) The Mikuni Valve Timing Control Devices Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including January 1, 2000 through June 28, 2019, (a) indirectly purchased Valve Timing Control Device(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one or more Valve Timing Control Device(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(T) The Mitsubishi Air Conditioning Systems Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including May 1, 1999 through the June 14, 2018, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Air Conditioning Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(U) The Nachi Bearings Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including January 1, 2000 through August 12, 2019, purchased a Vehicle in the United States for resale, which included, as a component part, one or more Automotive Bearings, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any alleged co-conspirator of a Defendant; or indirectly purchased, as a replacement part, one or more Automotive Bearings, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate of a Defendant, or any alleged co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(V) The NGK Spark Plugs Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2000 through January 24, 2018, (a) indirectly purchased Spark Plug(s), Standard Oxygen Sensor(s), or Air Fuel Ratio Sensor(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Spark Plug(s), Standard Oxygen Sensor(s), or Air Fuel Ratio Sensor(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(W) The Panasonic Air Conditioning Systems Settlement Class is defined as:

All Automobile Dealerships that, from May 1, 1999 through March 11, 2019, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale which included one or more Air Conditioning System(s) as a component part, or indirectly purchased one or more Air Conditioning System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(X) The Sanden Air Conditioning Systems Settlement Class is defined as:

All Automobile Dealerships that, from May 1, 1999 through February 8, 2018, (a) indirectly purchased Air Conditioning System(s) manufactured or sold by Defendants, any current or former subsidiary or affiliate of Defendants, or any co-conspirator, or (b) purchased Vehicles for resale that contained Air Conditioning System(s), which were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(Y) The Sanoh Automotive Steel Tubes Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including December 1, 2003 through April 10, 2019, (a) indirectly purchased Automotive Steel Tube(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(Z) The Showa Electronic Power Steering Assemblies Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2000 through July 19, 2019, (a) indirectly purchased one or more Electric Powered Steering Assembly(ies) which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased a Vehicle for resale that contained Electric Powered Steering Assembly(ies) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants,

their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(AA)    The Showa Shock Absorbers Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 1995 through July 19, 2019, (a) indirectly purchased one or more Shock Absorber(s) which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant, or (b) purchased a Vehicle for resale that contained one or more Shock Absorber(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(BB)    The SKF Automotive Bearings Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2000 through June 28, 2019, (a) indirectly purchased Automotive Bearing(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that included one or more Automotive Bearing(s) as a component part which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(CC)    The Stanley Automotive Lamps Settlement Class is defined as:

All Automobile Dealerships that, from July 1, 2002 through November 2, 2018, (a) indirectly purchased Automotive Lamp(s) as a component part, or indirectly purchased Automotive Lamp(s) as a replacement part, which were manufactured or sold by a Defendant, or any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Automotive Lamp(s) manufactured or sold by a Defendant or any current or former subsidiary, affiliate thereof or co-conspirator. Excluded from the Settlement Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(DD)    The Stanley HID Ballasts Settlement Class is defined as:

All Automobile Dealerships that, from July 1, 1998 through November 2, 2018, (a) indirectly purchased HID Ballast(s) as a component part, or indirectly purchased HID Ballast(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained HID Ballasts manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(EE)    The TKH Occupant Safety Restraint System Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2003 through November 27, 2018, (a) indirectly purchased Occupant Safety Restraint Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for

resale that contained Occupant Safety Restraint Systems which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(FF)    The Tenneco Exhaust Systems Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2002 through February 26, 2018, (a) indirectly purchased Exhaust Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased Vehicles for resale that contained Exhaust System(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or co-conspirator. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(GG)    The Tokai Rika Heater Control Panels Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2000 through March 29, 2018, (i) indirectly purchased Heater Control Panel(s) manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator of a Defendant, or (ii) purchased Vehicles for resale that contained Heater Control Panel(s) as a component part, or indirectly purchased one or more Heater Control Panel(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities

(HH)    The Tokai Rika Occupant Safety Restraint Systems Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2003 through March 29, 2018, (i) indirectly purchased Occupant Safety Restraint Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof, or any coconspirator of a Defendant, or (ii) purchased Vehicles for resale that contained one or more Occupant Safety Restraint System(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(II)    The Tokai Rika Switches Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2000 through March 29, 2018, (i) indirectly purchased Switches manufactured or sold by a Defendant or any co-conspirator of a Defendant, or (ii) purchased Vehicles for resale, which included one or more Switch(es) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(JJ)    The Tokai Rika Steering Angles Sensors Settlement Class is defined as:

All Automobile Dealerships that, from September 1, 2000 through March 29, 2018, (i) indirectly purchased Steering Angle Sensor(s) manufactured or sold by a Defendant, or any current or former

subsidiary or affiliate thereof, or any coconspirator of a Defendant, or (ii) purchased Vehicles for resale, which included one or more Steering Angle Sensor(s) as a component part, or indirectly purchased one or more Steering Angle Sensor(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(KK) The Toyo Denso Ignition Coils Settlement Class is defined as:

All Automobile Dealerships that, during the period from January 1, 2000 through April 26, 2018, (a) indirectly purchased Ignition Coil(s), which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Ignition Coils which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Ignition Coils Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(LL) The Toyo Denso Power Window Switches Settlement Class is defined as:

All Automobile Dealerships that, during the period from and including January 1, 2003 through April 26, 2018, (a) indirectly purchased Power Window Switches, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Power Window Switches which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(MM) The Toyoda Gosei Occupant Safety Systems Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2003 through July 20, 2018, (a) indirectly purchased Occupant Safety System(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Occupant Safety Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(NN) The Toyoda Gosei Constant Velocity Joint Boot Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2006 through July 20, 2018, (a) indirectly purchased Constant Velocity Joint Boot Product(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Constant Velocity Joint Boot Products(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(OO) The Toyoda Gosei Automotive Hoses Settlement Class is defined as:

All Automobile Dealerships that, from May 1, 2003 through July 20, 2018, (a) indirectly purchased Automotive Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant, or (b) purchased Vehicles for resale that contained Automotive Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(PP)    The Toyoda Gosei Body Sealing Products Settlement Class is defined as:

All Automobile Dealerships that, from January 1, 2000 through July 20, 2018, (a) indirectly purchased Body Sealing Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any coconspirator of a Defendant, or (b) purchased Vehicles for resale that contained Body Sealing Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any coconspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(QQ)    The Toyoda Gosei Interior Trim Products Settlement Class is defined as:

All Automobile Dealerships that, from June 1, 2004 through July 20, 2018, (a) indirectly purchased Interior Trim Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Interior Trim Products manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(RR)    The Toyoda Gosei Brake Hoses Settlement Class is defined as:

All Automobile Dealerships that, from February 1, 2004 through July 20, 2018, (a) indirectly purchased Brake Hose(s) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Brake Hoses manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

(SS)    The Usui Automotive Steel Tubes Settlement Class is defined as:

All Automobile Dealerships that, from December 1, 2003 through January 11, 2018, (a) indirectly purchased Automotive Steel Tubes manufactured or sold by a Defendant or any current or former subsidiary or affiliate of a Defendant or any co-conspirator, or (b) purchased Vehicles for resale in the United States, which included one or more Automotive Steel Tube(s) as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

(TT)   The Valeo Access Mechanisms Settlement Class is defined as:

> All Automobile Dealers who, from January 1, 2002 through January 11, 2018, (a) indirectly purchased Access Mechanisms manufactured by Defendants, any current or former subsidiary or affiliate thereof, or any coconspirator, or (b) purchased Vehicles for resale in the United States that included one or more Access Mechanisms as a component part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Access Mechanisms Settlement Class are Defendants, their parent companies, subsidiaries, and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

A list of the Defendants and the alleged co-conspirators for each case involving the affected component parts described in the Settlement Class definitions above is available on the Settlement Website at www.AutoDealerSettlement.com. You may also call the Settlement Administrator toll free at 1-888-565-3171 for more information.

Dealers who indirectly purchased certain component parts and/or purchased new vehicles for resale containing these component parts, listed in the Settlement Class definitions above, in one or more of the Included States (Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin) may receive money benefits from the Settlements. Dealers in the United States who indirectly purchased certain component parts and/or purchased new vehicles for resale containing these component parts, listed in the Settlement Class definitions above, may receive other, non-monetary benefits from the Settlements as explained in further detail on the Settlement Website at www.AutoDealerSettlement.com.

If your dealership is a member of one or more of these Settlement Classes and purchased in an Included State, the amount of money it will receive, if any, will depend upon where the dealership purchased the affected vehicles or component parts and the Plans of Allocation discussed below.

## 6.   I'M STILL NOT SURE IF MY DEALERSHIP IS INCLUDED

Additional information to help you determine whether your dealership is a member of one or more of the Settlement Classes eligible to make a claim for money benefits is available on the Settlement Website at www.AutoDealerSettlement.com. You may also call the Settlement Administrator toll free at 1-888-565-3171 for more information.

## THE SETTLEMENT BENEFITS—WHAT YOUR DEALERSHIP GETS

## 7.   WHAT DO THE SETTLEMENTS PROVIDE?

The settlement funds (the "Settlement Funds") for Dealers involved in this Notice total more than $88 million. The Settlement Funds for the respective Settlements and affected component parts are:

| Auto Parts Settlements and Settlement Funds | | | |
|---|---|---|---|
| **Automotive Parts Case** | **Settling Defendant** | **Amount Settled** | **Settlement Fund** |
| Access Mechanisms | Alpha | $852,000.00 | $1,092,000.00 |
| | Valeo | $240,000.00 | |
| Air Conditioning Systems | Calsonic | $1,627,534.94 | $6,895,534.94 |
| | MAHLE Behr | $468,000.00 | |

| | | | |
|---|---|---|---|
| | Mitsubishi | $2,160,000.00 | |
| | Panasonic | $240,000.00 | |
| | Sanden | $2,400,000.00 | |
| ATF Warmers | Calsonic | $120,115.87 | $120,115.87 |
| Automotive Hoses | Toyoda Gosei | $1,714,157.85 | $1,714,157.85 |
| Automotive Lamps | Stanley | $3,889,541.05 | $3,889,541.05 |
| Automotive Steel Tubes | Maruyasu | $1,645,728.00 | $5,965,728.00 |
| | Sanoh | $2,640,000.00 | |
| | Usui | $1,680,000.00 | |
| Bearings | Nachi | $1,020,000.00 | $3,420,000.00 |
| | SKF | $2,400,000.00 | |
| Body Sealing Products | Green Tokai | $300,000.00 | $8,873,258.96 |
| | Toyoda Gosei | $8,573,258.96 | |
| Brake Hoses | Toyoda Gosei | $208,249.33 | $208,249.33 |
| Ceramic Substrates | Corning | $8,400,000.00 | $8,400,000.00 |
| Constant Velocity Joint Boots | Toyoda Gosei | $226,264.76 | $226,264.76 |
| Electronic Power Steering Assemblies | Showa | $1,305,390.12 | $1,305,390.12 |
| Exhaust Systems | Bosal | $48,000.00 | $7,716,000.00 |
| | Faurecia | $468,000.00 | |
| | Meritor | $1,680,000.00 | |
| | Tenneco | $5,520,000.00 | |
| Fuel Injection Systems | Keihin | $264,000.00 | $1,143,072.00 |
| | Maruyasu | $34,272.00 | |
| | Mikuni | $844,800.00 | |
| Heater Control Panels | Tokai Rika | $431,550.97 | $431,550.97 |
| HID Ballasts | Stanley | $910,458.95 | $910,458.95 |
| Ignition Coils | Delphi | $240,000.00 | $480,000.00 |
| | Toyo Denso | $240,000.00 | |
| Instrument Panel Clusters | Continental | $1,200,000.00 | $1,200,000.00 |
| Interior Trim Products | Toyoda Gosei | $1,607,208.53 | $1,607,208.53 |
| Occupant Safety Restraint Systems | TKH[1] | $16,800,000.00 | $27,708,370.24 |
| | Tokai Rika | $9,077,509.67 | |
| | Toyoda Gosei | $1,830,860.57 | |
| Power Window Switches | Toyo Denso | $1,392,000.00 | $1,392,000.00 |
| Radiators | Calsonic | $1,764,509.19 | $1,764,509.19 |
| Shock Absorbers | KYB | $9,120,000.00 | $12,254,609.88 |
| | Showa | $3,134,609.88 | |
| Side Door Latches | Brose | $720,000.00 | $720,000.00 |
| Spark Plugs | NGK | $4,020,000.00 | $4,020,000.00 |
| Steering Angles Sensors | Tokai Rika | $214,014.95 | $214,014.95 |
| Switches | Tokai Rika | $1,076,924.41 | $1,076,924.41 |

[1] The payment by TKH a general, unsecured, non-priority claim under the TKH bankruptcy plan and the expected bankruptcy payout is expected to be considerably less than the settlement amount.

| Valve Timing Control Devices | Mikuni | $211,200.00 | $211,200.00 |
|---|---|---|---|
| | Total | | $104,960,160.00, including TKH bankruptcy claim |

After deduction of attorney's fees, notice and claims administration costs, litigation expenses, and service awards to the Dealers who served as the Class Representatives, as approved by the Court, the net Settlement Funds will be distributed to Settlement Class members eligible for monetary relief who file, or who previously filed, Proof of Claims that are allowed by the claim administrator and the Court. The net Settlement Funds will be allocated to eligible members of the Settlement Classes according to Plans of Allocation that have been or will be approved by the Court.

Under all of the Settlements, the Settling Defendants will provide certain cooperation in the Dealers' continuing litigation against any Non-Settling Defendants. Some of the settlement agreements give the Settling Defendants the right to withdraw from their respective Settlements, or reduce their payments of Settlement Funds, in the event that certain percentages of Settlement Class members elect to exclude themselves from the respective Settlement(s).

The final judgments and/or settlement agreements with respect to certain of the Settling Defendants will provide for additional non-monetary relief in the form of an injunction prohibiting these Settling Defendants (including certain affiliates of certain Settling Defendants) from engaging in certain conduct with respect to the identified parts for a period of two years from the date of entry of the final judgment. The terms of this additional non-monetary relief are contained in the proposed final judgments and/or settlement agreements relating to these Settling Defendants, and may be viewed at the Settlement Website, www.AutoDealerSettlement.com.

The Settlements provide for the release of claims against the Settling Defendants (including all related entities and products covered by the releases in the individual settlement agreements) for claims relating to alleged conduct identified in the settlement agreements. The settlement agreements describe in detail who is released and what claims and products are released, so read them carefully because those descriptions will be binding on you if you remain in one of the Settlement Class(es). If a Settlement is approved by the Court, all Settlement Class members who do not timely submit a valid request for exclusion from the respective Settlement Class and anyone claiming through them shall be deemed to have given up any related claims against the released parties.

The above description of the Settlements is only a summary. The complete terms, including the definitions of what parties and claims are being released, are set forth in the settlement agreements and Court filings, which may be obtained at the Settlement Website, www.AutoDealerSettlement.com.

## 8. HOW MAY MY DEALERSHIP RECEIVE A PAYMENT?

If your dealership remains in one or more of the Settlement Classes and one or more of those Settlements become effective, your dealership may be entitled to a portion of the Settlement Funds when a distribution is made to members of the applicable Settlement Class(es) who purchased the affected parts for resale as components in new vehicles or affected component parts in the Included States set out above. **If your dealership filed a valid Proof of Claim in any of the first three rounds of dealership settlements in this litigation, you may rely on that Proof of Claim and do nothing further to participate in the current settlements.** If you choose this option, the information you provided in the prior Proof of Claim will be used to determine your dealership's share in the net proceeds of the current proposed Settlements (if your prior Proof of Claim was timely, valid, and your dealership is entitled to a distribution under the Plans of Allocation (described below in response to Question No. 9)) and if and to the extent that the proposed Settlements are approved by the Court. Your dealership will be bound by the judgment and release to be entered by the Court as described below (the "Judgment"). Your dealership may also update the information provided

through the prior Proof of Claim by submitting an updated Proof of Claim form that must be postmarked, or submitted electronically, by April 17, 2020.

**If your dealership did <u>not</u> submit a Proof of Claim in any of the first three rounds of dealership settlements in this litigation but wants to share in the current settlements, it must submit a Proof of Claim either electronically on the Settlement Website at <u>www.AutoDealerSettlement.com</u> by midnight Eastern Standard Time on April 17, 2020, or by First Class Mail postmarked by the deadline of April 17, 2020 to:**

Auto Dealer Settlement Administrator
PO Box 8060
San Rafael, CA 94912-8060

If your dealership has submitted a valid Proof of Claim, it may then receive a distribution from the Settlements that are approved by the Court, and in which your dealership is a member of the Settlement Class.

The settlement agreements may be terminated for several reasons, including (1) if the Court does not approve, or materially modifies, the settlement agreements, (2) if the Court approves the settlement agreements but the approval is reversed or materially modified by an appellate court, or (3) by the parties under certain circumstances described in some of the settlement agreements. If the settlement agreements are terminated, the lawsuits will proceed as if the settlement agreements had not been entered into.  There will be no payments under any settlement agreements that are terminated.

## 9.  HOW MUCH WILL MY PAYMENT BE?

Your dealership's share (if any) of the Settlement Funds will be determined based upon the Plans of Allocation, which have been devised under the supervision of a special allocation consultant and which have been, or will be, approved by the Court.   The Plans of Allocation are or will be made available on the Settlement Website, at www.AutoDealerSettlement.com. The Plans of Allocation allocate the net proceeds of each of the Settlements to: (1) Dealers who purchased vehicle models that were subject to alleged collusion on bids for components parts, (2) Dealers who purchased vehicles from manufacturers of vehicles allegedly affected by collusion on bids for component parts, (3) Dealers who purchased the allegedly affected component parts manufactured by the Settling Defendants and/or their predecessors, subsidiaries and affiliates or their alleged co-conspirators, and (4) a reserve fund for future allocation and distribution to Settlement Class members.  Payments will take into account the number and type of vehicles and affected component parts your dealership purchased during the periods set forth in the Settlement Class definitions.

At this time, it is unknown how much money each Settlement Class member who purchased new affected vehicles or any of the affected component parts in the Included States listed in Question 2 above will receive.  It is expected that each Settlement Class member who purchased new affected vehicles or any of the affected component parts in the Included States and who files a valid Proof of Claim will receive a minimum payment of $350.00 under these Settlements.

Certain portions of the Plans of Allocation may be considered at the Final Approval Hearing, along with the fairness of the Settlements, and applications for attorney's fees, reimbursement of partial and future expenses, and service awards. The Plans of Allocation may also be considered at later hearings before the Court, and notice of such hearings will be provided on the Settlement Website.

## 10.  WHAT IS MY DEALERSHIP GIVING UP TO STAY IN THE SETTLEMENT CLASSES?

Unless your dealership excludes itself from a specific Settlement, it is staying in the corresponding Settlement Class(es), and that means that your dealership can't sue, continue to sue, or be part of any other lawsuit against that Settling Defendant (including all related entities covered by the releases in the individual settlement agreements) about the issues settled in these cases. This is called a release. It also means that all of the Court's orders will apply to and legally bind your dealership.

However, your dealership would not give up (a) any claim made with respect to any auto part that is not part of any Settlement or (b) any claim for negligence, certain breaches of contract, bailment, failure to deliver, lost goods, damaged or delayed goods, or a similar claim, or any other claim unrelated to the legal issues in these cases. The Settlements also do not affect the rights of the members of the Settlement Classes against any Non-Settling Defendant.  Lawsuits brought on behalf of Dealers will continue against the Non-Settling Defendants.

The settlement agreements, which are available at www.AutoDealerSettlement.com, describe the exact legal claims and rights that your dealership gives up if it stays in one or more of the Settlement Classes.

If your dealership wants to keep the right to sue or continue to sue one or more of the Settling Defendants, on its own, about the legal issues in these cases, then your dealership must take steps to get out of the Settlement(s) with those Settling Defendant(s). This is called excluding yourself, or opting out of, the Class. If your dealership opts out of a Settlement, it will not get any payment from that Settlement.

## EXCLUDING YOUR DEALERSHIP FROM ANY OF THE SETTLEMENTS

### 11.  HOW DO I GET MY DEALERSHIP OUT OF ONE OR MORE OF THE SETTLEMENTS?

If your dealership is a member of one or more of the Settlement Classes listed in Question 5 above and purchased new affected vehicles or any of the affected component parts in an Included State, you may opt-out or exclude your dealership from the Settlements.  To exclude your dealership from one or more of the Settlements, your dealership must send a letter saying that it wants to opt out or be excluded from the relevant Settlement Class(es). The letter must include the following information:

- A statement indicating that your dealership wants to be excluded from one or more of the Settlement Classes.
- Whether it wants to be excluded from:
  - the Settlement by Alpha of the claims in the Access Mechanisms Action;
  - the Settlement by Bosal of the claims in the Exhaust Systems Action;
  - the Settlement by Brose of the claims in the Side Door Latches Action;
  - the Settlement by Calsonic of the claims in the Radiators Action;
  - the Settlement by Calsonic of the claims in the ATF Warmers Action;
  - the Settlement by Calsonic of the claims in the Air Conditioning Systems Action;
  - the Settlement by Continental of the claims in the Instrument Panel Clusters Action;
  - the Settlement by Corning of the claims in the Ceramic Substrates Action;
  - the Settlement by Delphi of the claims in the Ignition Coils Action;
  - the Settlement by Faurecia of the claims in the Exhaust Systems Action;
  - the Settlement by Green Tokai of the claims in the Body Sealing Products Action;
  - the Settlement by Keihin of the claims in the Fuel Injection Systems Action;
  - the Settlement by KYB of the claims in the Shock Absorbers Action;
  - the Settlement by MAHLE Behr of the claims in the Air Conditioning Systems Action;
  - the Settlement by Maruyasu of the claims in the Fuel Injection Systems Action;
  - the Settlement by Maruyasu of the claims in the Automotive Steel Tubes Action;
  - the Settlement by Meritor of the claims in the Exhaust Systems Action;
  - the Settlement by Mikuni of the claims in the Fuel Injection Systems Action;
  - the Settlement by Mikuni of the claims in the Valve Timing Control Devices Action;
  - the Settlement by Mitsubishi of the claims in the Air Conditioning Systems Action;
  - the Settlement by Nachi of the claims in the Bearings Action;
  - the Settlement by NGK of the claims in the Spark Plugs Action;
  - the Settlement by Panasonic of the claims in the Air Conditioning Systems Action;
  - the Settlement by Sanden of the claims in the Air Conditioning Systems Action;
  - the Settlement by Sanoh of the claims in the Automotive Steel Tubes Action;
  - the Settlement by Showa of the claims in the Electronic Power Steering Assemblies Action;

- o   the Settlement by Showa of the claims in the Shock Absorbers Action;
- o   the Settlement by SKF of the claims in the Automotive Bearings Action;
- o   the Settlement by Stanley of the claims in the Automotive Lamps Action;
- o   the Settlement by Stanley of the claims in the HID Ballasts Action;
- o   the Settlement by TKH of the claims in the Occupant Safety Restraint Systems Action;
- o   the Settlement by Tenneco of the claims in the Exhaust Systems Action;
- o   the Settlement by Tokai Rika of the claims in the Heater Control Panels Action;
- o   the Settlement by Tokai Rika of the claims in the Occupant Safety Restraint Systems Action;
- o   the Settlement by Tokai Rika of the claims in the Switches Action;
- o   the Settlement by Tokai Rika of the claims in the Steering Angles Sensors Action;
- o   the Settlement by Toyo Denso of the claims in the Ignition Coils Action;
- o   the Settlement by Toyo Denso of the claims in the Power Window Switches Action;
- o   the Settlement by Toyoda Gosei of the claims in the Occupant Safety Restraint Systems Action;
- o   the Settlement by Toyoda Gosei of the claims in the Constant Velocity Joint Boots Action;
- o   the Settlement by Toyoda Gosei of the claims in the Automotive Hoses Action;
- o   the Settlement by Toyoda Gosei of the claims in the Body Sealing Products Action;
- o   the Settlement by Toyoda Gosei of the claims in the Interior Trim Products Action;
- o   the Settlement by Toyoda Gosei of the claims in the Brake Hoses Action;
- o   the Settlement by Usui of the claims in the Automotive Steel Tubes Action; or
- o   the Settlement by Valeo of the claims in the Access Mechanisms Action.

- • Your dealership's request for exclusion may not be effective unless it specifies from which Settlement(s) it is seeking exclusion.
- • The case name:  *In re Automotive Parts Antitrust Litigation*.
- • The name, address, telephone number, and signature of a person with the authority to bind the dealership in its decision to exclude itself from the Settlement(s).
- • All trade names or business names and addresses the dealership has used as a new car dealership, as well as any subsidiaries or affiliates who are requesting to be excluded from the Settlement(s).
- • Your dealership's dealer number(s) / dealer identification number(s) (for each car manufacturer for which you are or were an authorized dealer).

This letter must be postmarked by **November 22, 2019** and sent to:

> Auto Dealer Settlement Exclusions
> PO Box 6002
> Larkspur, CA 94977-6002

**If your dealership asks to be excluded from any of the Settlements, it will not get any payment from any of the particular Settlements from which it excludes itself, and your dealership cannot object to those Settlements.**

Unless your dealership excludes itself, it gives up any right to sue the Settling Defendants (including all related entities covered by the releases in the individual settlement agreements) for the claims that the Settlements resolve.  If your dealership has a pending lawsuit against a Settling Defendant (including all related entities covered by the releases in the individual settlement agreements) involving the same legal issues in this case, speak to your lawyer in that case immediately.  (Your dealership must exclude itself from the corresponding Settlement Class(es) in order to continue its own lawsuit against one or more of the Settling Defendants (including all related entities covered by the releases in the individual settlement agreements) concerning the parts for which they have settled.)

## 12. CAN MY DEALERSHIP REMAIN IN THE SETTLEMENTS WITH SOME DEFENDANTS AND EXCLUDE ITSELF FROM OTHERS?

Yes. Because there are separate Settlements of separate lawsuits, your dealership will need to decide, for each of the Settlements, whether to exclude itself from the Settlement, or whether to remain in the corresponding Settlement Class(es).

## 13. IF I EXCLUDE MY DEALERSHIP, CAN IT GET MONEY FROM THE SETTLEMENTS?

No. If your dealership excludes itself from one or more Settlements, it will not be able to get money from those particular Settlements. If your dealership excludes itself from some, but not all, of the Settlements, it will be eligible to receive payment from the Settlements for which it remains in the corresponding Settlement Class(es).

## THE LAWYERS REPRESENTING AUTO DEALERS

## 14. DOES MY DEALERSHIP HAVE A LAWYER IN THESE CASES?

The Court has appointed the law firms of Cuneo Gilbert & LaDuca, LLP, Larson • King, LLP, and Barrett Law Group, P.A. as interim class counsel ("Class Counsel") in these lawsuits to represent your dealership and all other members of the Settlement Classes. The Barrett Law Group is not involved in the anti-vibration rubber parts cases. The Court also appointed Mantese Honigman, PC as Liaison Counsel for Dealers. Other law firms, including Thrash Law Firm, PA and Lovelace Law Firm, PA, are representing Dealers. Your dealership will not be charged directly by these lawyers, and any fees that they are paid will come from any settlements or recovery in these lawsuits. If your dealership wants to be represented by its own lawyer, it may hire one at its own expense.

## 15. HOW WILL THE LAWYERS BE PAID?

Your dealership is not personally responsible for payment of attorneys' fees or expenses for Class Counsel or the other attorneys that have worked on behalf of the Dealers in these cases. As compensation for their time and the risk in litigating these cases on a contingent basis, Class Counsel will ask the Court to award attorneys' fees of up to 30 percent of the Settlement Funds and reimbursement of expenses they have already paid in representing Dealers in these lawsuits. Any payment to Class Counsel must be approved by the Court, the attorneys may request less than 30 percent of the Settlement Funds, and the Court may award less than the requested amount.

Class Counsel may also request that up to one percent of the Settlement Funds be awarded to the group of Dealers who serve as Class Representatives in these lawsuits to recognize them for the time, effort, and resources they have devoted to representing the Settlement Classes. If the Court grants this request, the service awards will be deducted proportionally from the Settlement Funds.

The fees, costs, expenses and service awards that the Court orders, plus the cost to administer the Settlements, will come out of the Settlement Funds. The motion requesting these awards will be considered at the Final Approval Hearing described in this Notice and will be posted on the Settlement Website, www.AutoDealerSettlement.com, by November 8, 2019.

## OBJECTING TO THE SETTLEMENTS OR THE REQUESTS FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS

Your dealership can tell the Court that it doesn't agree with the Settlements or some parts of them, or with the request for attorney's fees, reimbursement of expenses, or service awards.

**16.  HOW DOES MY DEALERSHIP COMMENT ON OR OBJECT TO THE SETTLEMENTS?**

Your dealership can object to any Settlement in which it is a member of the corresponding Settlement Class(es) as long as it has not excluded itself from the corresponding Settlement Class(es).  Your dealership can object if it doesn't like any part of them, or if it disagrees with the request for attorney's fees, expenses, and service awards.  The Court will consider your dealership's views.

To object, your dealership must send a letter that includes:

- Whether it wants to state an objection or make a comment in connection with:

  - the Settlement by Alpha of the claims in the Access Mechanisms Action;
  - the Settlement by Bosal of the claims in the Exhaust Systems Action;
  - the Settlement by Brose of the claims in the Side Door Latches Action;
  - the Settlement by Calsonic of the claims in the Radiators Action;
  - the Settlement by Calsonic of the claims in the ATF Warmers Action;
  - the Settlement by Calsonic of the claims in the Air Conditioning Systems Action;
  - the Settlement by Continental of the claims in the Instrument Panel Clusters Action;
  - the Settlement by Corning of the claims in the Ceramic Substrates Action;
  - the Settlement by Delphi of the claims in the Ignition Coils Action;
  - the Settlement by Faurecia of the claims in the Exhaust Systems Action;
  - the Settlement by Green Tokai of the claims in the Body Sealing Products Action;
  - the Settlement by Keihin of the claims in the Fuel Injection Systems Action;
  - the Settlement by KYB of the claims in the Shock Absorbers Action;
  - the Settlement by MAHLE Behr of the claims in the Air Conditioning Systems Action;
  - the Settlement by Maruyasu of the claims in the Fuel Injection Systems Action;
  - the Settlement by Maruyasu of the claims in the Automotive Steel Tubes Action;
  - the Settlement by Meritor of the claims in the Exhaust Systems Action;
  - the Settlement by Mikuni of the claims in the Fuel Injection Systems Action;
  - the Settlement by Mikuni of the claims in the Valve Timing Control Devices Action;
  - the Settlement by Mitsubishi of the claims in the Air Conditioning Systems Action;
  - the Settlement by Nachi of the claims in the Bearings Action;
  - the Settlement by NGK of the claims in the Spark Plugs Action;
  - the Settlement by Panasonic of the claims in the Air Conditioning Systems Action;
  - the Settlement by Sanden of the claims in the Air Conditioning Systems Action;
  - the Settlement by Sanoh of the claims in the Automotive Steel Tubes Action;
  - the Settlement by Showa of the claims in the Electronic Power Steering Assemblies Action;
  - the Settlement by Showa of the claims in the Shock Absorbers Action;
  - the Settlement by SKF of the claims in the Automotive Bearings Action;
  - the Settlement by Stanley of the claims in the Automotive Lamps Action;
  - the Settlement by Stanley of the claims in the HID Ballasts Action;
  - the Settlement by TKH of the claims in the Occupant Safety Restraint Systems Action;
  - the Settlement by Tenneco of the claims in the Exhaust Systems Action;
  - the Settlement by Tokai Rika of the claims in the Heater Control Panels Action;
  - the Settlement by Tokai Rika of the claims in the Occupant Safety Restraint Systems Action;
  - the Settlement by Tokai Rika of the claims in the Switches Action;
  - the Settlement by Tokai Rika of the claims in the Steering Angles Sensors Action;
  - the Settlement by Toyo Denso of the claims in the Ignition Coils Action;
  - the Settlement by Toyo Denso of the claims in the Power Window Switches Action;
  - the Settlement by Toyoda Gosei of the claims in the Occupant Safety Restraint Systems Action;
  - the Settlement by Toyoda Gosei of the claims in the Constant Velocity Joint Boots Action;
  - the Settlement by Toyoda Gosei of the claims in the Automotive Hoses Action;

- o the Settlement by Toyoda Gosei of the claims in the Body Sealing Products Action;
- o the Settlement by Toyoda Gosei of the claims in the Interior Trim Products Action;
- o the Settlement by Toyoda Gosei of the claims in the Brake Hoses Action;
- o the Settlement by Usui of the claims in the Automotive Steel Tubes Action; or
- o the Settlement by Valeo of the claims in the Access Mechanisms Action.

- The case name:  *In re Automotive Parts Antitrust Litigation*;
- The name, address, telephone number, and signature of a person with the authority to bind the dealership in its decision to object to the Settlement(s);
- All trade names or business names and addresses the dealership has used as a new car dealership, as well as any subsidiaries or affiliates who are objecting to the Settlement(s);
- Your dealership's dealer number(s) / dealer identification number(s) (for each car manufacturer for which you are or were an authorized new car dealer);
- Evidence that the objecting new car dealership is a member of one of the Settlement Classes;
- A full explanation of why your dealership objects to the Settlement(s) and which Settlement(s) it objects to;
- Whether you or an attorney representing your dealership intends to appear at the Final Approval Hearing; and
- Copies of any documents you wish to use, reference, or rely upon at the Final Approval Hearing.

Your dealership must mail the objection to the Court at the following address, postmarked by November 22, 2019:

> Clerk's Office
> Theodore Levin U.S. Courthouse
> 231 W. Lafayette Blvd., Room 564
> Detroit, MI 48226

A copy of the objection must also be mailed to the following address, postmarked by November 22, 2019:

> Auto Dealer Settlement Objections
> PO Box 6002
> Larkspur, CA 94977-6002

## 17.  WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?

Objecting is simply telling the Court that your dealership doesn't like something about the Settlements or the request for attorney's fees, reimbursement of expenses, or service awards.   Your dealership can object to one or more of the Settlements only if it stays in the Settlement Class(es) for the particular Settlement.  If your dealership excludes itself from a Settlement, it has no right to object because that Settlement no longer affects your dealership.

### THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlements, and the request for attorney's fees, expenses, and service awards. You may attend and ask the Court's permission to speak, but you don't have to participate in the hearing in order to attend.

## 18.  WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENTS?

The Court will hold the Final Approval Hearing on December 10, 2019 at 10:00 a.m. at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Courtroom 272, Detroit, MI 48226.  At that hearing, the Court will consider whether each of the Settlements is fair, reasonable, and adequate, and whether to award attorney's fees, reimbursement of expenses, and service awards.  The Court may also consider whether

certain of the Plans of Allocation are fair and reasonable. If there are objections, the Court will consider them. We do not know how long these decisions will take or whether appeals will be filed.

The Court may change the time and date of the Final Approval Hearing. Notice of any change will be posted at www.AutoDealerSettlement.com.

## 19. DO I HAVE TO COME TO THE HEARING?

No, but you are welcome to come at your own expense. If your dealership files an objection, you do not have to come to Court to talk about it. As long as you mailed your dealership's written objection on time, it will be before the Court when the Court considers whether to approve the Settlements. Your dealership also may pay its own lawyer to attend the Final Approval Hearing, but such attendance is not necessary.

## 20. MAY I SPEAK AT THE HEARING?

You, or a lawyer representing your dealership, may ask the Court for permission to speak at the Final Approval Hearing. If you wish to do so, you or the lawyer representing your dealership must send a letter stating the following:

- "Notice of Intention to Appear in *In re Automotive Parts Antitrust Litigation*";
- Which of the settlements identified in Question 5 you are seeking to address at the hearing;
- For each of the settlements you are seeking to address, the position your dealership will take and your reasons;
- The name, address, telephone number, and signature of the person who will appear; and
- Proof of your dealership's membership in at least one of the Settlement Classes.

The Notice of Intention to Appear must be filed with the Court at the following address, received by November 29, 2019:

> Clerk's Office
> Theodore Levin U.S. Courthouse
> 231 W. Lafayette Blvd., Room 564
> Detroit, MI 48226

Copies of the Notice of Intention to Appear must also be sent to the attorneys listed in Question 23.

## IF YOUR DEALERSHIP DOES NOTHING

## 21. WHAT HAPPENS IF MY DEALERSHIP DOES NOTHING?

If your dealership does nothing, it will remain in the class(es) for each Settlement of which your dealership is a Settlement Class member, and your dealership will be bound by the Judgment in the cases. However, to share in a distribution of the Settlement Funds, your dealership will need to timely submit a valid Proof of Claim form if it did not submit a valid Proof of Claim form in the earlier dealership settlements in this litigation. Your dealership may rely on its prior Proof of Claim if it does not wish to update its information. The Proof of Claim form and a form to update information are available on the Settlement Website at www.AutoDealerSettlement.com. After either relying on a prior valid Proof of Claim form or submitting a new form, your dealership may then receive a distribution from the Settlements that are approved by the Court, and in which you are a member of the corresponding Settlement Class(es). See Question 8 for more information.

**GETTING MORE INFORMATION**

### 22. ARE THERE MORE DETAILS ABOUT THE SETTLEMENTS AND THE REQUEST FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS?

This Notice summarizes the Settlements. More details are in the settlement agreements. You can get a copy of the settlement agreements by visiting www.AutoDealerSettlement.com. Class Counsel will file a motion for final approval of the Settlements and a motion with a request for attorney's fees, reimbursement of expenses, and service awards, which will contain additional information. The motion seeking attorneys' fees, reimbursement of expenses, and service awards will be filed by November 8, 2019 and will be available at www.AutoDealerSettlement.com.

### 23. HOW DO I GET MORE INFORMATION?

If you have questions, want more information, or want to review documents filed in these cases, you can visit the Settlement Website at www.AutoDealerSettlement.com or call the Settlement Administrator toll free at (888) 565-3171. You can also visit the office of the Clerk of Court, Theodore Levin U.S. Courthouse, 31 W. Lafayette Blvd., Room 564, Detroit, MI 48226 to review the Court filings or visit the Court's Public Access to Court Electronic Records (PACER) system at www.pacer.gov.

If you cannot locate the answer to your question, you may write to Class Counsel at the following addresses:

| | | |
|---|---|---|
| Jonathan W. Cuneo | Don Barrett | Shawn M. Raiter |
| Cuneo Gilbert & LaDuca, LLP | Barrett Law Group, P.A. | Larson • King, LLP |
| 4725 Wisconsin Ave. NW, #200 | P.O. Box 927 | 30 East Seventh Street, Suite 2800 |
| Washington, DC 20016 | Lexington, MS 39095 | St. Paul, MN 55101 |

### 24. CAN I UPDATE MY DEALERSHIP'S ADDRESS?

Yes. If your dealership's address changes, please update your information online at www.AutoDealerSettlement.com.

DATED: _____, 2019           BY ORDER OF THE COURT
                                             UNITED STATES DISTRICT COURT
                                             EASTERN DISTRICT OF MICHIGAN

                                             Judge Marianne O. Battani

# Exhibit – 3

<u>Legal Notice</u>

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN**

*In re Automotive Parts Antitrust Litigation*, No. 12-md-02311

**If You Are an Automobile Dealership that Purchased New Vehicles or Purchased Certain Parts for a Vehicle in the U.S. Since 1990**
**You Could Receive Money From Settlements of Class Actions**

Lawsuits involving the prices of certain vehicle component parts have been settled with certain Defendants in various class actions in this litigation ("Settling Defendants"). The Settling Defendants are identified below. The cases are separate class actions within the lead case known as *In re Automotive Parts Antitrust Litigation*, 12-md-02311 (E.D. Mich.), which is currently before United States District Judge Marianne O. Battani.

You can make a claim for money benefits if you are an automobile dealership that indirectly purchased certain component parts and/or purchased new vehicles containing these parts ("Dealer") in the District of Columbia or one or more of the following states: Arizona, Arkansas, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

**These Settlements may affect your rights. Read on for more information.**
**What Are The Lawsuits About?**

The separate lawsuits claim that the Defendants in each lawsuit engaged in unlawful agreements that had the effect of impacting the price of certain vehicle component parts. The lawsuits claim that, as a result of the relevant Defendants' conduct, Dealers paid more than they should have for the parts at issue and paid more for the new vehicles in which those parts are contained. The lawsuits also allege that Dealers were unable to pass on all of these increased costs to their customers.

These cases are proceeding as class actions for monetary recovery for Dealers in the states listed in this Notice and the District of Columbia. The lawsuits also seek nationwide injunctive relief. Although the Settling Defendants have agreed to settle, the Settling Defendants and certain affiliates deny that they engaged in any wrongdoing or are liable and owe any money or benefits to Plaintiffs. The Court has not yet decided who is right. The Settling Defendants have settled to avoid the cost and risk of trials.

The Court has appointed the law firms of Cuneo Gilbert & LaDuca, LLP, Larson • King, LLP, and Barrett Law Group, P.A. as interim class counsel ("Class Counsel") in these lawsuits to represent your dealership and all other members of the Dealer class actions. Your dealership will not be charged directly by these lawyers, and any fees that they are paid will come from any settlements or recovery in these lawsuits. If your dealership wants to be represented by its own lawyer, it may hire one at its own expense.

**Who's Included In The Settlements?**

Your dealership is part of one or more of the Settlements if it is a Dealer and falls within the definition of one or more of the settlement classes ("Settlement Classes") approved by Judge Battani. The class definitions are set forth in the full-length Notice, which is available at www.AutoDealerSettlement.com. The term "Dealer" or "dealership" means an entity or person authorized to engage in the business of selling and / or leasing new vehicles at retail in the United States. A list of the parts included in these Settlements and their manufacturers can be found at www.AutoDealerSettlement.com.

**Who Are The Settling Defendants?**

The Settling Defendants involved in this Notice are: ALPHA Corporation and Alpha Technology Corporation (collectively, "Alpha"), Bosal Industries-Georgia, Inc. ("Bosal"), Brose Schließsysteme GmbH & Co. Kommanditgesellschaft  and Brose North America (collectively, "Brose"), Calsonic Kansei Corporation and CalsonicKansei North America, Inc. (collectively "Calsonic"), Continental Automotive Electronics LLC, Continental Automotive Korea Ltd., and Continental Automotive Systems, Inc. (collectively, "Continental"), Corning International Kabushiki Kaisha and Corning Incorporated (collectively, "Corning"), Delphi Technologies PLC and Delphi Powertrain Systems, LLC (collectively, "Delphi"), Faurecia Abgastechnik GmbH, Faurecia Systèmes d'Échappement, Faurecia Emissions Control Technologies, USA, LLC, and Faurecia Emissions Control Systems,

N.A. LLC f/k/a Faurecia Exhaust Systems, Inc. (collectively, "Faurecia"), Green Tokai Co., Ltd. ("Green Tokai"), Keihin Corporation and Keihin Norther America (collectively, "Keihin"), KYB Corporation (f/k/a Kayaba Industry Co., Ltd.) and KYB Americas Corporation (collectively, "KYB"), MAHLE Behr GmbH & Co. KG and MAHLE Behr USA Inc. (collectively, "MAHLE Behr"), Maruyasu Industries, Co., Ltd. and Curtis-Maruyasu America, Inc. (collectively, "Maruyasu"), Meritor, Inc. f/k/a ArvinMeritor, Inc. (collectively, "Meritor"), Mikuni Corporation ("Mikuni"), Mitsubishi Heavy Industries, Ltd. and Mitsubishi Heavy Industries Climate Control, Inc. (collectively, "Mitsubishi"), Nachi Fujikoshi, NGK Spark Plug Co., Ltd. and NGK Spark Plugs (U.S.A.), Inc. (collectively, "NGK"), Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic"), Sanden Automotive Components Corporation, Sanden Automotive Climate Systems Corporation, and Sanden International (U.S.A.) Inc. (collectively, "Sanden"), Sanoh Industrial Co., Ltd. and Sanoh America, Inc. (collectively, "Sanoh"), Showa Corporation and American Showa, Inc. (collectively, "Showa"), SKF USA Inc. ("SKF"), Stanley Electric Co, Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc. (collectively, "Stanley"), Takata Holdings, Inc., through Joseph J. Farnan, Jr. as the trustee of the Reorganized TK Holdings Trust (collectively, "TKH"), Tenneco Inc., Tenneco GmbH, and Tenneco Automotive Operating Co., Inc. (collectively, "Tenneco"), Tokai Rika, Co. Ltd. and TRAM, Inc. d/b/a/ Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika"), Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., TG Missouri Corp., TG Kentucky, LLC, and TG Fluid Systems USA Corp. (collectively, "Toyoda Gosei"), Usui Kokusai Sangyo Kaisha, Ltd. and Usui International Corporation (collectively "Usui"), Valeo S.A. ("Valeo").

A list of the Defendants involved in this Notice, their affiliates, and the alleged co-conspirators for each case involving the parts described in the Settlement Class definitions and settlement agreements is available at www.AutoDealerSettlement.com.

## What Do The Settlements Provide?

Dealers in the United States who indirectly purchased certain component parts and/or purchased new vehicles containing these component parts, listed in the Settlement Class definitions, in the states listed in this Notice or the District of Columbia may receive money benefits from the Settlements. Dealers in the United States who indirectly purchased certain component parts and/or purchased new vehicles containing these component parts, listed in the Settlement Class definitions, may receive other, non-monetary benefits from the Settlements as explained in further detail at www.AutoDealerSettlement.com.

The settlement funds (the "Settlement Funds") for Dealers in these Settlements total at least $88 million. A table detailing the respective Settlements and the parts involved can be found in the full-length Notice, which is available at www.AutoDealerSettlement.com. The amount of money your dealership may receive, if any, will depend upon where the dealership purchased the affected vehicles or component parts, the type and quantity of vehicles and parts the dealership purchased in the states listed above and the District of Colombia, and the total number of claims made by eligible Dealers.  Attorneys' fees and expenses and class representative awards will be requested and may be awarded by the Court.

Under all of the Settlements, the Settling Defendants will provide certain cooperation in the Dealers' continuing litigation against the Non-Settling Defendants. Some of the settlement agreements give the Settling Defendants the right to reduce the amount they are required to pay and/or to withdraw from their respective Settlements in the event that certain percentages of Settlement Class members elect to exclude themselves from the respective Settlement(s). The final judgments and/or settlement agreements with respect to certain of the Settling Defendants will provide for additional non-monetary relief in the form of an agreement not to engage in certain conduct with respect to the identified parts for a period of two years from the date of entry of the final judgment. These terms are all contained in the proposed final judgments and/or settlement agreements relating to these Settling Defendants, and may also be viewed at www.AutoDealerSettlement.com.

## What Are My Rights And Options?

1. File a Proof of Claim to participate in the Settlements

**If your dealership filed a valid Proof of Claim in either of the first three rounds of dealership settlements in this litigation, you may rely on that Proof of Claim and do nothing further to participate in the current settlements.** If you choose this option, the information you provided in the prior Proof of Claim will be used to determine your dealership's share in the net proceeds of the current proposed Settlements.

**To remain in the Settlement Classes, you do not need to take any further action at this time. However, to share in the Settlement Funds, and only if your dealership did not submit a Proof of Claim form in the prior dealership settlements in this litigation, your dealership must submit a Proof of Claim form that is available at** www.AutoDealerSettlement.com**.** Proof of Claim forms must be filed by midnight Eastern Standard time on April 17, 2020 at www.AutoDealerSettlement.com or sent via USPS Mail, postmarked by April 17, 2020 to:

Auto Dealer Settlement Administrator
PO Box 404000
Louisville, KY 40233-4000

If you choose the File a Proof of Claim option, your dealership will share in the net proceeds of the Settlement Funds if: (1) your dealership's Proof of Claim is timely and valid; (2) your dealership is entitled to a distribution under the Plans of Allocation that have been or will be approved by the Court; and (3) the proposed Settlements are finally approved by the Court. Your dealership will be bound by the judgments and releases to be entered by the Court as described in the full-length Notice.

2. Opt your dealership out of the Settlements

If your dealership does not want to be included in one or more of the following settlements: Alpha of the claims in the Access Mechanisms Action; Bosal of the claims in the Exhaust Systems Action; Brose of the claims in the Side Door Latches Action; Calsonic of the claims in the Radiators Action; Calsonic of the claims in the ATF Warmers Action; Calsonic of the claims in the Air Conditioning Systems Action; Continental of the claims in the Instrument Panel Clusters Action; Corning of the claims in the Ceramic Substrates Action; Delphi of the claims in the Ignition Coils Action; Faurecia of the claims in the Exhaust Systems Action; Green Tokai of the claims in the Body Sealing Products Action; Keihin of the claims in the Fuel Injection Systems Action; KYB of the claims in the Shock Absorbers Action; MAHLE Behr of the claims in the Air Conditioning Systems Action; Maruyasu of the claims in the Fuel Injection Systems Action; Maruyasu of the claims in the Automotive Steel Tubes Action; Meritor of the claims in the Exhaust Systems Action; Mikuni of the claims in the Fuel Injection Systems Action; Mikuni of the claims in the Valve Timing Control Devices Action; Mitsubishi of the claims in the Air Conditioning Systems Action; Nachi of the claims in the Bearings Action; NGK of the claims in the Spark Plugs Action; Panasonic of the claims in the Air Conditioning Systems Action; Sanden of the claims in the Air Conditioning Systems Action; Sanoh of the claims in the Automotive Steel Tubes Action; Showa of the claims in the Electronic Power Steering Assemblies Action; Showa of the claims in the Shock Absorbers Action; SKF of the claims in the Automotive Bearings Action; Stanley of the claims in the Automotive Lamps Action; Stanley of the claims in the HID Ballasts Action; TKH of the claims in the Occupant Safety Restraint Systems Action; Tenneco of the claims in the Exhaust Systems Action; Tokai Rika of the claims in the Heater Control Panels Action; Tokai Rika of the claims in the Occupant Safety Restraint Systems Action; Tokai Rika of the claims in the Switches Action; Tokai Rika of the claims in the Steering Angles Sensors Action; Toyo Denso of the claims in the Ignition Coils Action; Toyo Denso of the claims in the Power Window Switches Action; Toyoda Gosei of the claims in the Occupant Safety Restraint Systems Action; Toyoda Gosei of the claims in the Constant Velocity Joint Boots Action; Toyoda Gosei of the claims in the Automotive Hoses Action; Toyoda Gosei of the claims in the Body Sealing Products Action; Toyoda Gosei of the claims in the Interior Trim Products Action; Toyoda Gosei of the claims in the Brake Hoses Action; the Settlement by Usui of the claims in the Automotive Steel Tubes Action; and/or the Settlement by Valeo of the claims in the Access Mechanisms Action. (as defined in the full-length Notice), it may request to be excluded. If your dealership timely submits a valid request for exclusion, it will not share in the Settlement Funds from the corresponding Settlement, and it will not be bound by the corresponding Judgment(s). It will then be your dealership's responsibility to pursue any of the claims that it preserves by opting out of one or more of the Settlement Classes. To be valid, the request for exclusion / opt out must follow the instructions set forth in the full-length Notice and be postmarked by November 22, 2019. The full instructions and requirements for opting out may be viewed at www.AutoDealerSettlement.com.

3. Object to the Settlements

If your dealership wishes to object to one or more of the Settlements or the request for attorney's fees, expenses, and service awards, it may (as discussed below) write to the Court and counsel about why it objects. It is possible that the Settlements and request for fees, expenses, and service awards will be approved despite your objection. To be considered, your dealership's objection must be filed according to the procedures set forth in the full-length Notice and postmarked no later than November 22, 2019. The full instructions and requirements for objecting to one or more of the Settlements may be viewed at www.AutoDealerSettlement.com.

4. <u>Attend the Final Approval Hearing</u>

The Court will hold a Final Approval Hearing on December 10, 2019 at 10:00 a.m. at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Courtroom 272, Detroit, MI 48226 to decide whether to approve the Settlements and the request for attorney's fees, expenses, and service awards. You may attend and ask the Court's permission to speak, but you don't have to participate in the hearing in order to attend. To request to speak at the Final Approval Hearing, you must follow the procedures set forth in the full-length Notice no later than November 29, 2019.

This notice is a summary only. The complete terms, including the definitions of what parties and claims are being released are set forth in the full-length Notice, settlement agreements, and the Court filings which may be obtained at www.AutoDealerSettlement.com.

**For More Information, Contact the Settlement Administrator Toll Free at (888) 565-3171 or Visit www.AutoDealerSettlement.com.**

# Exhibit – 4

# BANNER AD UNIT SAMPLES

Leaderboard



Large Rectangle



# Exhibit – 5

# FACEBOOK AD UNIT SAMPLES









# Exhibit – 6

## TWITTER PROMOTED TWEET SAMPLES





# Exhibit – 7



**AUTOMOBILE DEALERSHIP ACTIONS**
**NOTICE PLAN - ROUND 4**

**CAMPAIGN**

| Direct Notice | COST | TOTAL COST |
|---|---|---|
| Purchase updated auto dealership list.  The cost of Notice dissemination for this list will be accounted for on the estimate for Gilardi's administration services. | | $     7,753 |

**Print Publication**

| | COST | TOTAL COST |
|---|---|---|
| 1x Full Page Insertion -  Wards Autoworld Magazine | $     8,125 | |
| *Wards Autoworld is served in Digital Format Weekly to Dealers, Print Edition Primarily Targets Manufacturers* | | |
| 3x Full Page Insertion - Automotive News Magazine (weekly) | 57,883 | |
| 1x Full Page Insertion - Auto Dealer Monthly Magazine (monthly) | 6,869 | |
| ***WARDSAUTO DEALER EDITION E-Newsletter*** | | |
| Banner Ad in Wards Dealer focused eNewsletter which is delivered to 33,000 dealer professionals nationwide.  A notice campaign ad will be included in the earliest available E-Newsletter. | 15,450 | |
| **SUBTOTAL PRINT PUBLICATION:** | | 88,327 |

**PAID ONLINE ADVERTISING**

| | COST | TOTAL COST |
|---|---|---|
| **Banner Advertising on Automotive Industry Websites** | | |
| Automotive News - 166,000 Top Leaderboard and Medium Rectangle split over 2-3 weeks | $     32,500 | |
| Autodealer Monthly - Banner Embedded for 3 Months (placed as soon as possible after prelim approval) | 7,528 | |
| **Facebook Advertising Targeting Dealership Pages** | | |
| Text Link Ads and banner Display Ads | 12,000 | |
| **Twitter Promoted Tweet Campaign** | | |
| Promoted Tweets delivered over 30 day period.  The targeting will utilize twitter handles of known auto dealerships, handles for dealership organizations such as NADA, and handles of industry publications such Autonews and Autoworld. | 7,500 | |
| **Artwork Creation, Placement, and Mgmt fee** | 4,000 | |
| **SUBTOTAL PAID ONLINE ADVERTISING:** | | 63,528 |

**NEWSWIRE**

| | COST | TOTAL COST |
|---|---|---|
| **Press Releases through Businesswire and/or PR Newswire** | | 2,500 |
| Once released, a newswire piece is available for up to 30 days to media outlets for further distribution | | |
| **TOTAL  COST:** | | $     162,108 |